1   JORDAN ETH (CA 121617)                KAREN G. JOHNSON-MCKEWAN (CA 121570)
    JEth@mofo.com                          KJohnson-mckewan@orrick.com
2   PHILIP T. BESIROF (CA 185053)          WARRINGTON S. PARKER III (CA 148003)
    PBesirof@mofo.com                      WParker@orrick.com
3   CHRISTIN J. HILL (CA 247522)           KENNETH P. HERZINGER (CA 209866)
    CHill@mofo.com                         KHerzinger@orrick.com
4   MORRISON & FOERSTER LLP                ALEXANDER K. TALARIDES (CA 268068)
    425 Market Street                      ATalarides@orrick.com
5   San Francisco, California 94105-2482   ORRICK, HERRINGTON & SUTCLIFFE LLP
    Telephone:  415.268.7000               405 Howard Street
6   Facsimile:  415.268.7522               San Francisco, California  94105
    *Attorneys for Defendants Lawrence J.* Telephone:  415.773.5700
7   *Ellison, Safra A. Catz, Jeffrey O. Henley,*  Facsimile: 415.773.5759
    *Jeffrey S. Berg, Michael J. Boskin, Bruce*   *Attorneys for Nominal Defendants Oracle*
8   *R. Chizen, George H. Conrades, Rona A.*      *Corporation and Oracle America, Inc.*
    *Fairhead, Renée J. James, Charles*
9   *Moorman IV, Leon E. Panetta, William G.*
    *Parrett, Naomi O. Seligman, and Vishal*
10  *Sikka*

11  DORIAN DALEY (CA 129049)
    Dorian.Dailey@oracle.com
12  DEBORAH MILLER (CA 95527)
    Deborah.Miller@oracle.com
13  JAMES C. MAROULIS (CA 208316)
    Jim.Maroulis@oracle.com
14  ORACLE CORPORATION
    2300 Oracle Way
15  Austin, Texas 78741
    Telephone:  737.867.1000
16  *Attorneys for Nominal Defendants Oracle*
    *Corporation and Oracle America, Inc.*
17
                    UNITED STATES DISTRICT COURT
18
                   NORTHERN DISTRICT OF CALIFORNIA
19
                       SAN FRANCISCO DIVISION
20
21  KLEIN, et al., derivatively on behalf of     Lead Case No. 3:20-cv-04439-JSC
    ORACLE CORPORATION and ORACLE
22  AMERICA, INC.,
                                                  DEFENDANTS' NOTICE OF MOTION
23          Plaintiffs,                           AND MOTION TO DISMISS
                                                  PLAINTIFFS' VERIFIED AMENDED
24          v.                                    CONSOLIDATED SHAREHOLDER
                                                  DERIVATIVE COMPLAINT;
    LAWRENCE J. ELLISON, et al.,                  MEMORANDUM OF POINTS AND
25                                                AUTHORITIES IN SUPPORT THEREOF
            Defendants.
26                                                Date:     April 8, 2021
                                                  Time:     9:00 a.m.
27                                                Judge:    Hon. Jacqueline Scott Corley

28

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on April 8, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jacqueline Scott Corley in Courtroom E on the 15th floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102-3489, the Director Defendants Lawrence J. Ellison, Safra A. Catz, Jeffrey O. Henley, Jeffrey S. Berg, Michael J. Boskin, Bruce R. Chizen, George H. Conrades, Rona A. Fairhead, Renée J. James, Charles Moorman IV, Leon E. Panetta, William G. Parrett, Naomi O. Seligman, and Vishal Sikka, and Nominal Defendants Oracle Corporation and Oracle America, Inc. (together, "Oracle" or the "Company") will, and hereby do, move to dismiss Plaintiffs' Verified Amended Consolidated Shareholder Derivative Complaint (the "Complaint" or "Compl.") (Dkt. No. 21) pursuant to Federal Rule of Civil Procedure 23.1 and the doctrine of *forum non conveniens*.  In addition, the Director Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is supported by the following Memorandum of Points and Authorities and the Request for Judicial Notice and Declaration of Christin J. Hill, filed concurrently herewith; the papers and pleadings on file with the Court; and such other written or oral argument and other materials as may be presented before the Court takes this Motion under submission.

**ISSUES TO BE DECIDED**

1.      **DEMAND FUTILITY.**  Whether the Complaint should be dismissed under Federal Rule of Civil Procedure 23.1 because Plaintiffs lack standing to proceed with this shareholder derivative action where they did not make a pre-suit demand on Oracle's Board of Directors and do not allege with particularity facts showing that a majority of Oracle's Board of Directors is disqualified from considering a pre-suit demand.

2.      **FAILURE TO STATE A CLAIM.**  Whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

3.      **FORUM SELECTION.**  Whether the claims should be dismissed for *forum non*

*conveniens* because Oracle's bylaws include a forum-selection clause that requires that shareholder derivative actions be adjudicated by the Delaware Court of Chancery.

Dated:  January 13, 2021

JORDAN ETH
PHILIP T. BESIROF
CHRISTIN J. HILL
MORRISON & FOERSTER LLP

By:      */s/ Jordan Eth*
            JORDAN ETH

*Attorneys for Director Defendants*

Dated:  January 13, 2021

DORIAN DALEY
DEBORAH MILLER
JAMES C. MAROULIS
ORACLE CORPORATION

KAREN G. JOHNSON-MCKEWAN
WARRINGTON S. PARKER III
KENNETH P. HERZINGER
ALEXANDER K. TALARIDES
ORRICK, HERRINGTON & SUTCLIFFE LLP

By:      */s/ Alexander K. Talarides*
            ALEXANDER K. TALARIDES

*Attorneys for Nominal Defendants Oracle Corporation and Oracle America, Inc.*

# TABLE OF CONTENTS

Page(s)

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

    A.    The Company and Its Board of Directors ................................................. 3

    B.    Oracle's Compliance with Relevant Legal and Regulatory Requirements............ 4

    C.    This Derivative Action ............................................................................ 5

        1.    The Complaint Asserts That the Board and Unnamed Executives Failed to Create Meaningful Diversity and Violated Anti-Discrimination Laws. ....................................................................... 5

        2.    The Complaint Claims That the Board Made False Statements in Oracle's 2018 and 2019 Proxies. ..................................................... 7

        3.    Plaintiffs' Causes of Action and the Relief Sought. .................. 9

ARGUMENT ......................................................................................................................... 9

I.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD THAT DEMAND IS EXCUSED. ................................................................. 9

    A.    The Demand Requirement and Rule 23.1's "Stringent" Pleading Requirements........................................................................................... 9

    B.    Plaintiffs Do Not Plead Particularized Facts Showing That Any Director Is "Interested." ......................................................................................... 12

        1.    The Officer Directors Do Not Face a Substantial Likelihood of Liability Under the Exchange Act.............................................. 12

            a.    Because Plaintiffs do not seek monetary damages, the Exchange Act claims do not create a substantial likelihood of personal liability. ....................................................... 12

            b.    Plaintiffs also fail to plead particularized factual allegations showing that the Proxies contained any material misrepresentations or omissions. ................................ 13

            c.    Plaintiffs fail to plead particularized facts giving rise to a strong inference of negligence. ......................................... 20

            d.    Plaintiffs fail to plead particularized facts showing that the Proxies caused any cognizable loss.............................. 20

        2.    The Officer Directors Do Not Face a Substantial Likelihood of Liability for Breach of Fiduciary Duty. ..................................... 22

# TABLE OF CONTENTS
### (cont.)

|  |  |  |  | Page(s) |
|---|---|---|---|---|

C. Plaintiffs Do Not Plead Particularized Facts Showing That a Majority of the Board Lacks Independence From an "Interested" Director. .......................... 22

    1. Because Ellison Is Not "Interested," The Court Need Not Determine Whether the Other Directors Are Independent. ...................... 23

    2. Plaintiffs Fail to Plead That Ellison Controls Oracle's Board. ................ 24

    3. Plaintiffs Fail to Sufficiently Plead That Oracle's Outside Directors Are Incapable of Considering a Demand Based On Their Alleged Ties to Ellison. ......................................................................... 26

II. THE COURT SHOULD ALSO DISMISS EACH CAUSE OF ACTION UNDER RULE 12(b)(6). ......................................................................... 28

  A. The Complaint Fails to State a Section 14(a) Claim. ............................ 28

  B. The Complaint Fails to State a Fiduciary Duty Claim. ......................... 29

    1. The Complaint Fails to Plead Harm to Oracle. ......................... 31

    2. The Complaint Does Not Adequately Allege That the Director Defendants Consciously Failed to Monitor Oracle's Operations. ........... 32

    3. The Complaint Fails to Plead a Breach of the Duty of Loyalty. .............. 33

  C. The Complaint's Remaining State Law Claims Fail. ........................... 33

    1. The Complaint Fails to Plead a Claim for Aiding and Abetting. .............. 33

    2. The Complaint Fails to Plead a Claim for Abuse of Control. .................. 34

    3. The Complaint Fails to Plead a Claim for Unjust Enrichment. ............... 34

III. ORACLE'S BYLAWS REQUIRE THAT PLAINTIFFS' CLAIMS BE BROUGHT IN THE DELAWARE COURT OF CHANCERY. ..................................... 34

CONCLUSION ......................................................................... 35

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re Accuray, Inc. S'holder Litig.*,
　757 F. Supp. 2d 919 (N.D. Cal. 2010) ....................................................................................34

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
　910 A.2d 1020 (Del. Ch. 2006).............................................................................................33

*In re Am. Apparel, Inc. 2014 Derivative S'holder Litig.*,
　No. CV1405230MWFJEMX, 2015 WL 12724070 (C.D. Cal. Apr. 28, 2015) .......................13

*In re Am. Apparel, Inc. S'holder Litig.*,
　855 F. Supp. 2d 1043 (C.D. Cal. 2012) .................................................................................15

*Aronson v. Lewis*,
　473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746
　A.2d 244 (Del. 2000) ...............................................................................................9, 24, 29

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................................28

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
　571 U.S. 49 (2013) ..................................................................................................................35

*Basic Inc. v. Levinson*,
　485 U.S. 224 (1988)................................................................................................................16

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
　845 A.2d 1040 (Del. 2004) ............................................................................................. *passim*

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)................................................................................................................28

*Billard v. Angrick*,
　220 F. Supp. 3d 132 (D.D.C. 2016) .......................................................................................35

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.*,
　73 A.3d 934 (Del. Ch. 2013)............................................................................................34, 35

*Brody v. Transitional Hosps. Corp.*,
　280 F.3d 997 (9th Cir. 2002)............................................................................................13, 16

*Buckley Family Tr. v. McCleary*,
　No. CV 2018-0903-AGB, 2020 WL 1522549 (Del. Ch. Mar. 31, 2020) .............................22

*In re Citigroup S'holder Deriv. Litig.*,
　964 A.2d 106 (Del. Ch. 2009)...........................................................................................19, 29

*City of Birmingham Relief & Ret. Sys. v. Hastings*,
　No. 18-CV-02107-BLF, 2019 WL 3815722 (N.D. Cal. Feb. 13, 2019)...........................20, 21

# TABLE OF AUTHORITIES
### (cont.)

**Cases**                                                                     **Page(s)**

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)................................................................17, 18, 19

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)...............................................................................17

*In re Cray Inc.*,
431 F. Supp. 2d 1114 (W.D. Wash. 2006)..........................................................31

*In re: CytRx Corp. Stockholder Deriv. Litig.*,
No. CV146414GHKPJWX, 2015 WL 9871275 (C.D. Cal. Oct. 30, 2015)............35

*Daisy Sys. Corp. v. Finegold*,
No. C86-20719-SW, 1988 WL 166235 (N.D. Cal. Sept. 19, 1988)......................31

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010)..............................................................................28

*Desaigoudar v. Meyercord*,
223 F.3d 1020 (9th Cir. 2000)............................................................................20

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007)..........................................................10, 11, 14, 19

*In re Diamond Foods, Inc. Derivative Litig.*,
No. C 11-05692 WHA, 2012 WL 1945814 (N.D. Cal. May 29, 2012)............20, 21

*In re Facebook, Inc., IPO, Sec. & Derivative Litig.*,
922 F. Supp. 2d 445 (S.D.N.Y. 2013)................................................................31

*In re Facebook, Inc. S'holder Derivative Privacy Litig.*,
367 F. Supp. 3d 1108 (N.D. Cal. 2019) ............................................................35

*In re Facebook, Inc. Sec. Litig.*,
405 F. Supp. 3d 809 (N.D. Cal. 2019) ..............................................................17

*Falat v. Cyril*,
Case No. 20-cv-1782 (N.D. Cal. Sept. 18, 2020)................................................5

*In re Gen. Motors Co. Deriv. Litig.*,
C.A. No. 9627-VCG, 2015 WL 3958724 (Del. Ch. June 26, 2015).....................32

*In re HP Deriv. Litig.*,
No. 5:10-CV-3608 EJD, 2012 WL 4468423 (N.D. Cal. Sept. 25, 2012) .............21

*In re Intel Corp. Deriv. Litig.*,
621 F. Supp. 2d 165 (D. Del. 2009) ..................................................................32

*In re Johnson & Johnson Deriv. Litig.*,
865 F. Supp. 2d 545 (D.N.J. 2011) ...................................................................32

# TABLE OF AUTHORITIES
### (cont.)

**Cases**                                                                                 **Page(s)**

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ................................................................................................10

*Kelley v. Rambus, Inc.*,
   No. C 07-1238JFHRL, 2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ....................................20

*Kiger v. Mollenkopf*,
   Case No. 20-cv-01355-LAB-MDD (S.D. Cal. July 17, 2020)....................................5

*In re KKR Fin. Holdings LLC S'holder Litig.*,
   101 A.3d 980 (Del. Ch. 2014).................................................................................24

*Krieger v. Atheros Commc'ns, Inc.*,
   No. 11-CV-00640-LHK, 2012 WL 1933559 (N.D. Cal. May 29, 2012) .................................12

*Lee v. Fisher*,
   Case No. 20-cv-6163 (N.D. Cal. September 1, 2020)..................................................5

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ....................................................................................34

*Marvin H. Maurras Revocable Tr. v. Bronfman*,
   No. 12 C 3395, 2013 WL 5348357 (N.D. Ill. Sept. 24, 2013).................................32

*McElrath v. Kalanick*,
   224 A.3d 982 (Del. 2020) ...........................................................................11, 22, 24, 25

*MCG Capital Corp. v. Maginn*,
   No. CIV.A. 4521-CC, 2010 WL 1782271 (Del. Ch. May 5, 2010)................11, 12, 13, 26, 27

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................12, 20

*Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*,
   No. 10872-VCMR, 2016 WL 4076369 (Del. Ch. Aug. 1, 2016) ................................30, 31, 32

*New York City Employees' Ret. Sys. v. Jobs*,
   593 F.3d 1018 (9th Cir. 2010), *overruled, in part, on unrelated grounds, Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012) .................................................12

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
   No. 15-CV-02938-HSG, 2016 WL 7475555 (N.D. Cal. Dec. 29, 2016)..................................13

*North v. McNamara*,
   47 F. Supp. 3d 635 (S.D. Ohio 2014) .....................................................................35

*Ocegueda v. Zuckerberg*,
   Case No. 20-cv-04444 (N.D. Cal. July 2, 2020).......................................................5

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015).........................................................................................17, 19

**TABLE OF AUTHORITIES**
(cont.)

**Cases**                                                                                  **Page(s)**

*In re Oracle Corp. Deriv. Litig.*,
    824 A.2d 917 (Del. Ch. 2003)..................................................................................26

*In re Oracle Corp. Derivative Litig.*,
    No. C 10-3392 RS, 2011 WL 5444262 (N.D. Cal. Nov. 9, 2011)................................. *passim*

*Paskowitz v. Pac. Capital Bancorp*,
    No. CV 09-6449 ODW (JCX), 2009 WL 4911850 (C.D. Cal. Nov. 6, 2009).........................16

*In re PayPal Holdings, Inc. S'holder Deriv. Litig.*,
    No. 17-CV-00162-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018)............................... *passim*

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*,
    No. C 11-2369-SI, 2012 WL 424557 (N.D. Cal. Feb. 9, 2012)..................................34

*In re Polycom, Inc.*,
    78 F. Supp. 3d 1006 (N.D. Cal. 2015) ...................................................................31

*Quinn v. Anvil Corp.*,
    620 F.3d 1005 (9th Cir. 2010)..................................................................................10

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ...................................................................10, 11, 24

*RBC Capital Mkts., LLC v. Jervis*,
    129 A.3d 816 (Del. 2015) ...................................................................33, 34

*In re Read-Rite Corp.*,
    335 F.3d 843 (9th Cir. 2003), *abrogated, in part, on unrelated grounds* ...............................13

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,845 F.3d 1268 (9th Cir. 2017) ...........................................................................15

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)..................................................................................13, 16

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007)..................................................................................33

*In re Sagent Tech., Inc. Deriv. Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...............................................................33

*Seafarers Pension Plan on Behalf of Boeing Co. v. Bradway*,
    No. 19 C 8095, 2020 WL 3246326 (N.D. Ill. June 8, 2020).....................................35

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999), *abrogated, in part, on unrelated grounds* ...............................10

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
    911 A.2d 362 (Del. 2006) ...................................................................29, 30, 31, 33

# TABLE OF AUTHORITIES
## (cont.)

**Cases**                                                                 **Page(s)**

*Stricklin v. Ferland,*
    No. CIV.A. 98-3279, 1998 WL 966023 (E.D. Pa. Nov. 10, 1998)..........................................29

*In re Symbol Techs. Sec. Litig.,*
    762 F. Supp. 510 (E.D.N.Y. 1991) ......................................................................32

*In re Velti PLC Sec. Litig.,*
    No. 13-CV-03889-WHO, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)....................................19

*In re VeriSign, Inc., Derivative Litig.,*
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...............................................9, 10, 20, 29

*Walther v. ITT Educ. Servs., Inc.,*
    No. CV 8273-MA, 2015 WL 545331 (Del. Ch. Feb. 10, 2015), *adopted*, (Del.
    Ch. Feb. 25, 2015)....................................................................................30

*Wood v. Baum,*
    953 A.2d 136 (Del. 2008) ...................................................................10, 29

*In re Yahoo! Inc. S'holder Deriv. Litig.,*
    153 F. Supp. 3d 1107 (N.D. Cal. 2015) ..........................................................10

**Statutes**

8 Del. C. § 102(b)(7)...........................................................................29

8 Del. C. § 115 ................................................................................35

10 Del. C. § 8106 ..........................................................................25, 32

15 U.S.C. § 78u–4(b)(1)........................................................................12

15 U.S.C. § 78u-4(b)(4) .......................................................................12

Cal. Corp. Code § 301.3.........................................................................4

Cal. Corp. Code § 301.4.........................................................................4

**INTRODUCTION**

Plaintiffs' shareholder derivative complaint is a misguided attempt to capitalize on the racial-justice movement.  Plaintiffs present their claims as a means of rooting out systemic racism and achieving racial equality.  But Plaintiffs have chosen the wrong target for their criticisms and the wrong means for achieving their goals.

Though Plaintiffs repeatedly assert that Oracle's leadership is an "all-white" "Old Boy's Club," Plaintiffs ignore the actual diversity of Oracle's Board and executive leadership.  Currently, more than one-third of the Board is female or a member of a community of color.  Oracle is led by a female CEO and has been for six years.  Before that, the Board's composition reflected a similar amount of diversity, and Oracle was led by female and Black Presidents for eight years.

Plaintiffs also repeatedly assert that Oracle violated unidentified anti-discrimination laws.  A linchpin of Plaintiffs' allegations—cited dozens of times in the complaint—is a discrimination suit the Department of Labor filed against the Company.  ***Oracle won that case***.  The court found that the DOL failed to prove any theory of discrimination, and before Plaintiffs filed this Complaint, the government decided not to appeal.  Plaintiffs bury in a footnote the fact that Oracle prevailed in the DOL lawsuit, and falsely assert that the government had not yet decided whether to appeal the ruling.

With these undisputed facts against them, Plaintiffs turn to empty platitudes—"[a]ctions speak louder than words"—and society-wide generalities—"[t]he racial pay gap is well-documented and persistent."  But falsehoods, slogans, and innuendo are no substitute for factual allegations.  Plaintiffs' empty, conclusory allegations come nowhere close to meeting the stringent standards for pursuing a derivative action on Oracle's behalf.

It is a fundamental principle of corporate law that the board of directors—not individual shareholders—controls the company's affairs, including any decision to pursue litigation on the company's behalf.  While a shareholder derivative lawsuit provides a narrow exception to this rule, shareholders seeking to bring a derivative lawsuit must meet the "exacting" pleading standards of Federal Rule of Civil Procedure 23.1.  To do so, a derivative plaintiff must allege

1  particularized facts showing that a pre-suit litigation demand would have been "futile" because a

2  majority of the board members (a) is interested or (b) lacks independence from an interested

3  Board member.

4     The Complaint's demand futility allegations are narrow.  Plaintiffs assert that the three

5  Officer Directors are "interested" in this litigation because they face a substantial likelihood of

6  liability under Delaware law for breach of fiduciary duty and under Section 14(a) of the Securities

7  Exchange Act of 1934 (the "Exchange Act") for making allegedly false and misleading

8  statements in Oracle's 2018 and 2019 proxy statements (the "Proxies").  But Plaintiffs have not

9  come close to showing that any Director faces liability on either of those claims, which alone

10  justifies dismissal.

11     As an initial matter, no Director faces a substantial likelihood of liability for Plaintiffs'

12  Section 14(a) claim, for the simple reason that Plaintiffs are not seeking monetary damages from

13  any Director for this claim.  Further, both the breach of fiduciary duty and Section 14(a) claims

14  fail because Plaintiffs cannot show that Defendants made any false statement.  Unable to show

15  that Defendants concealed "rampant unlawful discrimination," Plaintiffs allege that the Proxies

16  are false because they state that Oracle "values a diversity of backgrounds" and is "committed to

17  actively seeking women and minority candidates for" the Board.  The current diverse composition

18  of Oracle's Board by itself shows the veracity of Oracle's statements.  The changing composition

19  of the Board also shows that the Company has been "actively seeking women and minority

20  candidates," as the most recently added Board members were a woman (Rona Fairhead in 2019)

21  and a minority candidate (Vishal Sikka in 2020).  Another diverse director, Hector Garcia-

22  Molina, passed away in 2019.  Further, that the Board does not currently have a Black member

23  does not mean that the Defendants were not committed to diversity.  Moreover, on-point Ninth

24  Circuit authority holds corporate statements of commitment, like those Plaintiffs challenge here,

25  inactionable as a matter of law.  In short, Oracle's Board is not "devoid" of "minorities," but the

26  Complaint is devoid of the particularized factual allegations Rule 23.1 requires.

27     Plaintiffs also challenge the Officer Directors' statements of opinion about shareholder

28  proposals.  Here, too, Plaintiffs' challenge fails because they again do not allege any facts, much

1   less particularized ones, showing that the Officer Directors did not genuinely value diversity, for

2   example, or hold the other beliefs they expressed, and that the stated beliefs were objectively

3   untrue.

4          Though the Court need not reach the issue because Plaintiffs have failed to show that any

5   Director is interested in this suit, Plaintiffs' contention that demand is futile because a majority of

6   the Directors are not independent of Ellison also fails.  Delaware courts have consistently rejected

7   the type of conclusory and generic independence allegations that Plaintiffs allege here.

8   Hyperbole and hearsay do not pass muster under Rule 23.1 or Delaware law.

9          All of these reasons independently support dismissal under Rule 23.1.  In addition, each

10  claim is subject to dismissal under Rule 12(b)(6) for the same reasons that support dismissal

11  under Rule 23.1, and for the additional reasons discussed below.

12                                    **BACKGROUND**

13  **A.      The Company and Its Board of Directors**

14         Oracle is a Delaware corporation with its headquarters in Austin, Texas.[1]  (Compl. ¶ 29.)

15  Oracle provides a broad range of products and services that address all aspects of corporate

16  information technology environments, including databases, applications, platforms, and

17  infrastructure.  (*Id.*)  Oracle employs 136,000 people worldwide.  (*Id.* ¶ 125.)

18         Oracle's Board of Directors (the "Board") is composed of three officer directors:  Safra A.

19  Catz (Chief Executive Officer ("CEO")), Lawrence J. Ellison (Co-Founder, Chairman, and Chief

20  Technology Officer), and Jeffrey O. Henley (Vice Chairman) (together the "Officer Directors");

21  and eleven outside, non-employee directors:  Jeffrey S. Berg, Michael J. Boskin, Bruce R.

22  Chizen, George H. Conrades, Rona A. Fairhead, Renée J. James, Charles Moorman IV, Leon E.

23  Panetta, William G. Parrett, Naomi O. Seligman, and Vishal Sikka (together the "Outside

24  Directors" and collectively with the Officer Directors, the "Director Defendants").  (*Id.* ¶¶ 31-44.)

25  Oracle's shareholders overwhelmingly voted in favor of electing each member of Oracle's Board.

26         Oracle's Board and executive leadership is among the most diverse of any Fortune 500

27  ───────────────

28        [1] While the Complaint alleges that Oracle is headquartered in Redwood City, California
    (Compl. ¶ 29), Oracle moved its headquarters to Austin in December 2020.

1    company.  Catz, a woman, has served as Oracle's CEO since 2014, and as a director since 2001.

2    (*Id.* ¶ 32.)  She previously served as Oracle's President, amongst other roles.  More than one-third

3    of Oracle's current Board is either female (Catz, Fairhead, James, and Seligman) or a member of

4    a community of color (Sikka).[2]  (*See id.* ¶ 1.)

5        Historically, Oracle's Board has also had Latino and Black directors.  Hector Garcia-

6    Molina, who the Complaint alleges signed both of the challenged Proxies (*id.* ¶¶ 118, 149), was a

7    member of Oracle's Board from 2001 until his death in November 2019.  Charles E. Phillips, Jr.,

8    among the highest-profile Black executives in the United States, served from 2003-2010 as

9    President of Oracle (with Catz) and as a member of the Board.

10       **B.**    **Oracle's Compliance with Relevant Legal and Regulatory Requirements**

11       California is one of the few jurisdictions that impose diversity requirements on companies

12   with headquarters in the state, and Oracle is already ahead of those mandates.  The California

13   Legislature has noted that as of June 2017, only twelve percent of California's public companies

14   had three or more female directors.  (S.B. 826 (Cal. 2018).)  Oracle was among that twelve

15   percent, making it a leader among publicly traded companies.

16       In 2018, California enacted California Corporations Code section 301.3, which requires

17   all publicly traded companies with headquarters in California to have at least one woman on their

18   board by the end of 2019.  By the end of 2021, the statute requires companies with six or more

19   directors to have at least three women directors.  *See* Cal. Corp. Code § 301.3.  Oracle was again

20   ahead of the curve, with three women Board members in 2018, and four in 2019.

21       On September 30, 2020, California enacted California Corporations Code section 301.4.[3]

22   That bill requires that as of December 31, 2021, California companies have at least one director

23

24   [2] The Complaint incorrectly alleges that Oracle's Board has "zero Asian American
     members."  (Compl. ¶ 71.)  Sikka is Indian-American.

25   [3] Plaintiffs say that Oracle is one of the few companies without a Black director.  (Compl.
     ¶ 1.)  Unsurprisingly, Plaintiffs include no support for that assertion:  In proposing Cal. Corp.
26   Code § 301.4, the California Legislature noted that of the 662 publicly traded companies with
     headquarters in California, only 13 percent had at least one Latino director and 16 percent had at
27   least one Black director.  Cal. A.B. No. 979, available at:
     https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB979.  In the
28   last eleven years, Oracle has had both.

from an underrepresented minority community.  Oracle already meets that requirement, too.
Tellingly, Plaintiffs ignore these facts *and* fail to cite any anti-discrimination statute from
California, Delaware, Texas, or anywhere else that Oracle has violated.

### C.    This Derivative Action

On July 2, 2020, Plaintiff Andre Klein filed a derivative action against all 14 members of
Oracle's Board and 30 unnamed "Doe" defendants.  (ECF No. 1.)[4]  On July 10 and 30, 2020,
Kathleen Dinsmore and Alison Sherman, respectively, filed their own substantively identical
putative derivative complaints in this Court.  (Case No. 4:20-cv-04602-KAW, ECF No. 1; Case
No. 3:20-cv-5255-DMR, ECF No. 1.)  The Court subsequently consolidated the three derivative
actions.  (ECF No. 8; ECF No. 54.)  On December 7, 2020, Plaintiffs filed the operative amended
consolidated complaint (the "Complaint").[5]  (ECF No. 55.)

### 1.    The Complaint Asserts That the Board and Unnamed Executives Failed to Create Meaningful Diversity and Violated Anti-Discrimination Laws.

Ignoring Oracle's long track record of diversity, the Complaint claims that Oracle failed to
"create any meaningful diversity at the very top of the Company."  (Compl. ¶ 1.)  Plaintiffs allege
that the Board failed to "ensure diversity on the Board" and failed "to ensure the Company's
compliance with [unidentified] Federal and state laws regarding diversity and anti-
discrimination."  (*Id.* §§ VII.E, VII.F.)  The Complaint, however, does not allege that any court
has found that Oracle, or any of the Director Defendants, has ever violated any state or federal
anti-discrimination laws.  Indeed, the Complaint does not attribute any specific purported act of

---

[4] Plaintiffs' counsel has filed similar complaints against Facebook, Inc., Qualcomm, NortonLifeLock Inc., Gap Inc., and Monster Beverage Corp.  *See Ocegueda v. Zuckerberg*, Case No. 20-cv-04444 (N.D. Cal. July 2, 2020); *Kiger v. Mollenkopf*, Case No. 20-cv-01355-LAB-MDD (S.D. Cal. July 17, 2020); *Elliemaria Toronto ESA v. Pilette*, Case No. 20-cv-05410 (N.D. Cal. August 5, 2020); *Lee v. Fisher*, Case No. 20-cv-6163 (N.D. Cal. September 1, 2020); *Falat v. Cyril*, Case No. 20-cv-1782 (C.D. Cal. Sept. 18, 2020).  Like the current Complaint, these complaints all are about the companies' purported false commitments to diversity, and principally point to the lack of Black directors.

[5] Plaintiffs Klein and Dinsmore had previously filed their own consolidated derivative complaint.  (ECF No. 21.)  Sherman's action was then consolidated with Klein and Dinsmore's, and a second consolidated complaint was filed after Sherman obtained documents from Oracle pursuant to Title 8, Section 220 of the Delaware General Corporation Law ("Section 220").

1   discrimination to Ellison or any other officer or Board member.  Instead, Plaintiffs rely almost

2   entirely on unproven allegations made in two lawsuits, one of which Oracle won, and the other of

3   which is pending.

4          Plaintiffs build their Complaint around a 2017 Department of Labor ("DOL") action

5   against Oracle that alleged pay and hiring discrimination against women and minorities (the

6   "DOL Litigation").  (*E.g.*, *id.* ¶¶ 8, 80, 83-100, 128, 131, 135.)  But *Oracle prevailed in that*

7   *action*, and the court issued a 278-page Recommended Decision and Order ("DOL Order")

8   finding that the DOL failed to prove any theory of discrimination.  (*Id.*)[6]  Plaintiffs tellingly hide

9   this fact in a footnote.  (*Id.*)  The Complaint also states that "[a]s of the filing of this complaint,

10  the government has not yet decided whether to file an appeal."  (*Id.* ¶ 90 n.15.)  Not so.  Four

11  days before Plaintiffs filed the Complaint, the DOL issued a press release stating that the Director

12  of the Office of Federal Contract Compliance Programs and the Solicitor of Labor had decided

13  not to appeal the order, in part because "we believe the likelihood of prevailing on appeal is

14  low."[7]  Shortly thereafter, the case was closed, and the DOL Order became final.[8]

15         Nevertheless, citing the now-dismissed DOL complaint dozens of times, Plaintiffs argue

16  that the Director Defendants caused "severe financial and reputational damage to Oracle" because

17  the DOL claimed Oracle owed $400 million in back pay to affected minorities, including Black

18  individuals.  (Compl. ¶¶ 8, 17, 84, 98, 227.)

19         Plaintiffs fault the Board for authorizing Oracle to defend itself against the lawsuit *in*

20  *which it prevailed* (*id.* ¶ 96), and allege that Oracle's corporate governance structure and internal

21

22         [6]*OFCCP v. Oracle America, Inc.*, 2017-OFC-00006, ALJ's Recommended Decision
    (Dep't of Labor September 22, 2020), available
23  at: https://www.oalj.dol.gov/DECISIONS/ALJ/OFC/2017/OFCCP_v_ORACLE_AMERICA_IN
    C_2017OFC00006_(SEP_22_2020)_153743_CADEC_PD.PDF?_ga=2.30526972.216343325.16
24  00968050-1130244644.1559847319.

25         [7] OFCCP, U.S. Department of Labor, *Statement by OFCCP Director Craig Leen*
    *Regarding Updates Between OFCCP and Oracle America* (December 3, 2020), available
26  at: https://www.dol.gov/newsroom/releases/ofccp/ofccp20201203-0.

27         [8] *OFCCP v. Oracle America, Inc.*, ARB No. 2020-0072, ALJ No. 2017-OFC-00006
    (ARB Dec. 9, 2020), available at:
28  https://www.dol.gov/sites/dolgov/files/OALJ/PUBLIC/ARB/DECISIONS/ARB_DECISIONS/O
    FC/20_072_OFCP.PDF.

controls were "defective" because they allowed "the discriminatory practices that led to the DOL lawsuit and the Company's discriminatory pay practices . . ." (*id.* ¶ 145).

Significantly, however, following a nine-day evidentiary trial, the court found that:

- "Oracle did not engage in intentional compensation discrimination" against female, Asian, or African American employees in the fields at issue. (DOL Order at 2.)

- "Oracle did not engage in assignment, job classification, or steering discrimination" against female, Asian, or African American employees in the fields at issue. (*Id.* at 3.)

- And, "Oracle did not have a policy or practice at its headquarters facility during the relevant time period of relying on prior pay in salary setting and [the DOL] did not show a disparate impact" against female, Asian, or African American employees in the relevant fields. (*Id.* at 4.)

Plaintiffs also point to a pending 2017 class action complaint in San Mateo Superior Court alleging that Oracle paid women less than men (the "*Jewett* Action"). (Compl. ¶¶ 81-82.) Oracle vigorously denies the allegations in that lawsuit and has pending case-dispositive motions for summary judgment. (*See, e.g.*, Declaration of Christin J. Hill ISO Motion to Dismiss ("Hill Decl."), Ex. B.)

Plaintiffs also cite a November 22, 2019 letter sent by a group of U.S. lawmakers to Oracle about the racial diversity of its Board. (Compl. ¶¶ 76-78.) Plaintiffs do not allege that this letter accused Oracle of violating any anti-discrimination laws. (*Id.*) Rather, the members of Congress noted the same thing that Plaintiffs allege here: Oracle currently has no Black directors.

### 2. The Complaint Claims That the Board Made False Statements in Oracle's 2018 and 2019 Proxies.

Plaintiffs allege that the Board made a series of false and misleading statements in Oracle's 2018 and 2019 Proxies (the "Challenged Statements"). (Compl. § VII.D.) The Challenged Statements fall into two categories.

First, Plaintiffs challenge statements that express the Board and Governance Committee's (composed of Berg, Chizen, and Panetta (Compl. ¶ 120)) values and "commitment" to diversity, including:

- "The Governance Committee values a diversity of backgrounds, experience, perspectives and leadership in different fields when identifying nominees. As noted in our Corporate Governance Guidelines, the Governance Committee is committed to actively seeking women

and minority candidates for the pool from which director candidates are chosen." (Compl. ¶ 118.)

- "As set forth in our Guidelines, the Governance Committee, acting on behalf of the Board, is committed to actively seeking women and minority candidates for the pool from which director candidates are selected." (*Id.* ¶ 119.)

- "[W]e are committed to ensuring that we do not discriminate on the basis of gender in our compensation programs, and we are further committed to diversity and inclusion in our workforce." (*Id.* ¶ 125.)

- "Our compensation framework aims to achieve equity, as well as recognition of each employee's particular knowledge, skills, abilities, performance, experience, and contributions to the company." (*Id.* ¶ 126.)

Plaintiffs allege that these statements were false and misleading because "regardless of whether Oracle's Governance Committee . . . ever made any efforts to recruit any Black individuals and other minorities to the Board, no Black individuals currently serve on the Board." (*Id.* ¶ 120.) Plaintiffs also contend that these statements did not disclose that Oracle's "stated policies with respect to diversity and anti-discrimination were not effective and were not being complied with," leading to "rampant unlawful discrimination." (*Id.* ¶ 143.)

Second, Plaintiffs challenge statements of opinion and belief the Directors made in the Proxies in opposition to shareholder proposals relating to the implementation of director term limits, the publication of a "pay equity report," and the creation of an "independent board chairman" position, including:

- "[T]he Board believes that imposing limits on director tenure would arbitrarily deprive it of the valuable contributions of its most experienced members." (*Id.* ¶ 121.)

- "We believe the creation and publication of a pay equity report as requested by this proposal would be costly and time-consuming and, in light of our long-standing efforts in this area, would not lead to meaningful gains in support of workforce diversity and gender pay equity." (*Id.* ¶ 126.)

- "We do not believe that a policy requiring an independent chair is necessary to ensure that the Board provides independent and effective oversight of Oracle's business and management." (*Id.* ¶ 139.)

Plaintiffs allege that these statements were false and misleading because the "Director Defendants did not genuinely believe them." (*Id.* ¶ 140.) Plaintiffs say that the Directors made these statements to "conceal the true reasons for Oracle's long-standing failure to add Black individuals to its Board." (*Id.* ¶ 123.) In addition, the Complaint claims that documents produced pursuant to plaintiff Sherman's Section 220 request show that the Board "barely discussed and reviewed

documents" before authorizing a pre-drafted proxy opposition to the 2017 and 2018 shareholder proposals.  (*Id.* ¶ 127.)  The Complaint says the same must have occurred in 2019, as Oracle did not produce any 2019 documents in response to Sherman's Section 220 request.  (*Id.* ¶ 136.)

### 3.   Plaintiffs' Causes of Action and the Relief Sought.

The Complaint asserts five "causes of action" purportedly on behalf of Oracle:  (1) a breach of fiduciary duty claim, against all of the Director Defendants; (2) an aiding and abetting breach of fiduciary duty claim, against all Director Defendants; (3) an abuse of control claim, against Defendants Ellison and Catz; (4) an unjust enrichment claim, against all Director Defendants; and (5) a claim for violations of Section 14(a) of the Exchange Act based on Oracle's 2018 and 2019 Proxies, against all Director Defendants.  (Compl. ¶¶ 299-324.)

In addition to monetary damages for their state common law claims, Plaintiffs seek unprecedented relief that would reshape Oracle's Board and its relationship with its shareholders. Plaintiffs ask the Court to compel the Director Defendants to put forward for shareholder vote twelve so-called "Corporate Governance Policies," including proposals requiring the resignation of three current directors to be replaced with "two Black persons and one other minority"; the replacement of Ellison as Chairman; the publication of an annual Diversity Report and Pay Equity Report; the creation of a $700 million fund to hire Black and minority employees; and the replacement of Ernst & Young as Oracle's auditor.  (*See id.* at pp. 110-12.)

As explained below, Plaintiffs' allegations are insufficient to wrest control of the Company's litigation decisions from Oracle's Board.

### ARGUMENT

## I.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD THAT DEMAND IS EXCUSED.

### A.   The Demand Requirement and Rule 23.1's "Stringent" Pleading Requirements.

A "cardinal precept" of Delaware law is that boards of directors, not shareholders, manage a corporation's affairs.  *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  An individual shareholder "does not have standing to sue in an individual capacity for injury to the corporation."  *In re VeriSign, Inc.,*

1   *Derivative Litig.*, 531 F. Supp. 2d 1173, 1188 (N.D. Cal. 2007) (citation omitted).  The action

2   must, instead, be brought as a shareholder derivative action.  A derivative action is "an equitable

3   remedy in which a shareholder asserts on behalf of a corporation a claim not belonging to the

4   shareholder, but to the corporation."  *Id.* at 1188 (citation omitted).

5        Under Federal Rule of Civil Procedure 23.1, a shareholder seeking to wrest control of

6   litigation from the corporation's board must first lodge a demand with the board or, in the

7   alternative, "plead with particularity the reasons why such demand would have been futile."  *In re*

8   *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999), *abrogated, in part, on*

9   *unrelated grounds*; *see also In re Oracle Corp. Deriv. Litig.*, No. C 10-3392 RS, 2011 WL

10  5444262, at *2 (N.D. Cal. Nov. 9, 2011).  "Because a shareholder derivative suit is an

11  extraordinary action that allows a shareholder to step into the shoes of a corporation and make

12  claims on behalf of the corporation, Federal Rule of Civil Procedure 23.1 'establishes stringent

13  conditions for bringing such a suit.'"  *In re PayPal Holdings, Inc. S'holder Deriv. Litig.*, 2018

14  WL 466527, at *2 (N.D. Cal. Jan. 18, 2018) (quoting *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012

15  (9th Cir. 2010)).

16       Plaintiffs here have not made a demand on the Board (Compl. ¶ 235), and therefore must

17  meet Rule 23.1's "stringent" pleading requirements for establishing demand futility.  Because

18  Oracle is a Delaware corporation (*id.* ¶ 29), Delaware law supplies the substantive standard for

19  assessing whether demand should be excused.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S.

20  90, 108-09 (1991).  To excuse demand under Delaware law, a plaintiff must plead "particularized

21  facts creating a reasonable doubt that a majority of the Board would be **[a]** disinterested or **[b]**

22  independent [from an interested party] in making a decision on a demand."  *PayPal*, 2018 WL

23  466527, at *2 (*quoting Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993)); *see also, e.g.*, *In re*

24  *Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d 1107, 1119 (N.D. Cal. 2015).

25       **Interested:**  To show that a director is "interested," a derivative plaintiff must plead

26  particularized allegations showing that a "substantial likelihood of personal liability exists"—the

27  "mere threat of personal liability is insufficient."  *Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del.

28  2008) (alterations omitted).  To meet this burden, a "derivative complaint must plead facts

*specific to each director*" and cannot rely on allegations relating to the board as a whole. *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (emphasis in original). A derivative plaintiff must also plead demand futility on a "claim-by-claim basis." *MCG Capital Corp. v. Maginn*, No. CIV.A. 4521-CC, 2010 WL 1782271, at *18 (Del. Ch. May 5, 2010).

**Independent:** Showing that a director "lacks independence" from an interested party is similarly challenging. Delaware law affords directors a presumption of independence. To overcome this presumption, a plaintiff must plead particularized facts that show that the director is "subject to the interested party's dominion or beholden to that interested party," such that the director is incapable of considering a demand on "its merits without being influenced by improper considerations." *McElrath v. Kalanick*, 224 A.3d 982, 991 (Del. 2020) (citations omitted). Notably, a derivative plaintiff must plead particularized facts showing that the disinterested directors are not independent from a director *who faces a substantial likelihood of liability* for a pleaded cause of action. *See Rales*, 634 A.2d at 936. So, if the derivative plaintiff fails to adequately plead that any director is interested, the Court need not reach "independence."

While Plaintiffs' 113-page Complaint challenges all sorts of unrelated alleged conduct— from Oracle's hiring practices to its selection of auditors to a decade-old dispute with Hewlett-Packard ("HP")—Plaintiffs allege demand futility on far narrower grounds. Specifically, Plaintiffs allege that the three Officer Directors face a substantial likelihood of liability on two claims: (i) violation of Section 14(a) (Count V) and (ii) breach of fiduciary duty by making allegedly false statements in Oracle's Proxies (a subset of Count I).[9] (Compl. ¶¶ 237-40.) Plaintiffs have not met their burden to show interestedness with respect to either theory of liability. That alone is enough to dismiss the Complaint in its entirety under Rule 23.1. In

---

[9] That Plaintiffs do not even allege demand futility for their remaining claims—aiding and abetting breach of fiduciary duty (Count II), abuse of control (Count III), and unjust enrichment (Count IV)—is another basis for dismissal of those claims pursuant to Rule 23.1. In addition, any attempt to allege demand futility based on those claims would fail because, as discussed below in Section II, each of Plaintiffs' claims (including Counts II-IV) should be dismissed for failure to state a claim under Rule 12(b)(6). *See In re Oracle*, 2011 WL 5444262, at *6 n.12 (explaining that the Rules 12(b)(6) and 23.1 analyses "largely overlap"; holding that claims should be dismissed under Rule 12(b)(6) for the same reasons that subjected them to dismissal under Rule 23.1).

addition, Plaintiffs have not adequately alleged that at least four of the Outside Directors lack

independence from Ellison, or from any other Officer Director.  (*See id.* ¶¶ 237, 247-56.)[10]

### B.  Plaintiffs Do Not Plead Particularized Facts Showing That Any Director Is "Interested."

#### 1.  The Officer Directors Do Not Face a Substantial Likelihood of Liability Under the Exchange Act.

Plaintiffs allege that the Officer Directors face a substantial likelihood of liability under

Section 14(a) of the Exchange Act because they "negligently issued, caused to be issued, and

participated in the issuance of materially misleading" statements in the 2018 and 2019 Proxies.

(*Id.* ¶¶ 318-24.)  To establish a substantial likelihood of liability for a Section 14(a) violation, a

derivative plaintiff must plead particularized factual allegations demonstrating:  (1) the proxy

statement contained a material misrepresentation or omission; (2) a strong inference of negligence

on the part of defendants; (3) that the proxy solicitation itself was an essential link in the

accomplishment of the challenged corporate transaction; and (4) loss causation, in other words,

that the alleged misrepresentation or omission caused the loss for which the plaintiff seeks to

recover damages.  *See New York City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir.

2010), *overruled, in part, on unrelated grounds, Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th

Cir. 2012); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1263 (N.D. Cal. 2000);

15 U.S.C. § 78u-4(b)(4).  Plaintiffs have not pled particularized facts to support any element of

their claim.[11]

#### a.  Because Plaintiffs do not seek monetary damages, the Exchange Act claims do not create a substantial likelihood of personal liability.

As an initial matter, "Plaintiffs do not seek any monetary damages for the proxy law

violations."  (Compl. ¶ 323.)  But Delaware law is clear:  "[A] request for equitable relief *does*

---

[10] Plaintiffs also allege that four of the eleven Outside Directors lack independence from Catz (Compl. ¶ 241), but say nothing more on the matter.  And Plaintiffs allege nothing at all about why the Outside Directors allegedly lack independence from Henley.

[11] Plaintiffs' allegations also fail to meet the Private Securities Litigation Reform Act's requirement that the complaint "specify each statement alleged to have been misleading," as well as the "reasons why the statement is misleading."  15 U.S.C. § 78u–4(b)(1); *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2012 WL 1933559, at *6 (N.D. Cal. May 29, 2012).

1    *not subject defendants to the type of personal liability necessary to excuse demand*."  *MCG*

2    *Capital*, 2010 WL 1782271, at *21 (emphasis added).  It is "the potential for monetary liability,

3    *not the possibility of being subject to an injunction*, that establishes the problematic interest a

4    board member may feel to excuse a demand."  *In re Am. Apparel, Inc. 2014 Derivative S'holder*

5    *Litig.*, No. CV1405230MWFJEMX, 2015 WL 12724070, at *15 (C.D. Cal. Apr. 28, 2015)

6    (applying Delaware law) (emphasis added).  As equitable relief is all Plaintiffs seek here, demand

7    may not be excused based on the Exchange Act claims.

8    **b.**  **Plaintiffs also fail to plead particularized factual allegations showing that the Proxies contained any material misrepresentations or omissions.**

9

10          To plead falsity, Plaintiffs must plead "contemporaneous statements or conditions"

11   showing the "misleading nature of the statements when made."  *Ronconi v. Larkin*, 253 F.3d 423,

12   432 (9th Cir. 2001) (citation omitted).  This requires particularized factual allegations showing

13   that the challenged statements "affirmatively create[d] an impression of a state of affairs that

14   differ[ed] in a material way from the one that actually exist[ed]."  *Brody v. Transitional Hosps.*

15   *Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (citation omitted); *PayPal*, 2018 WL 466527, at *4

16   (applying *Brody* to Section 14(a) claim).  To meet this burden, the particularized facts alleged

17   must be "necessarily inconsistent" with the challenged statements.  *In re Read-Rite Corp.*, 335

18   F.3d 843, 848 (9th Cir. 2003), *abrogated, in part, on unrelated grounds*.  That is, Plaintiffs must

19   "establish a *contradiction* between the alleged materially misleading statements and reality."

20   *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-CV-02938-HSG, 2016 WL 7475555, at *3 (N.D.

21   Cal. Dec. 29, 2016) (emphasis added).

22          Plaintiffs wrongly claim that the Proxies contained two categories of materially

23   misleading statements.  First, Plaintiffs claim that statements expressing Oracle's "commitment to

24   diversity" and inclusion were misleading as Oracle did not "promote[] equality," engaged in

25   allegedly discriminatory "hiring, pay, and promotion processes," and "did not take diversity into

26   consideration when evaluating potential Board candidates."  (Compl. ¶¶ 118, 126, 143(a), (d), (e),

27   (g), (h)-(m).)  Second, Plaintiffs claim that the Director Defendants' opinion statements in

28   response to shareholder proposals regarding director term limits, employee pay reports, and the

appointment of an independent chair of the Board were misleading as they concealed "existing, known, and glaring pay disparity at the Company" and disguised the Director Defendants' "desire . . . to keep minorities off the Board." (*Id*. ¶¶ 143(b)-(c), (f).)  Both of those theories fail.

        **(i)**        **Plaintiffs fail to plead that statements about Oracle's commitment to diversity were materially false or misleading.**

Plaintiffs have not pled particularized facts showing that statements generally expressing the Board's "commit[ment] to actively seeking women and minority candidates for" the Board (*id*. ¶¶ 118-19, 150-51), the Company's commitment to non-discrimination (*id*. ¶ 126), and the Company's "aim[] to achieve equity" through its compensation framework (*id*. ¶ 126) were materially false or misleading.  Plaintiffs' allegations fail for five independent reasons.

First, Plaintiffs have not alleged particularized facts contradicting the Board's "commit[ment] to actively seeking women and minority candidates for the pool from which director candidates are chosen." (*Id*. ¶¶ 118-20, 150-51.)  Plaintiffs do not plead *any* facts about Oracle's pool of director candidates, or the nomination and search process the Board or the Governance Committee used to select director candidates.  That includes failing to allege anything at all about Ellison, Catz, and Henley's involvement in that process.  (*See id*. ¶¶ 118-23.)  In fact, on this issue, the Complaint waffles between assertions about the "Board" and the "Director Defendants." (*See, e.g.*, *id*. ¶¶ 120, 123 ("[T]he Board has never in good faith actively sought minority candidates;" the "Director Defendants made intentionally or reckless false statements . . . .")  The latter *does not even include the Officer Directors.*  (*Id*. ¶ 45 (defining "Director Defendants" to exclude the Officer Directors).)  In any event, the prohibition on group pleading extends to either grouping.  *See Desimone*, 924 A.2d at 943 (A "derivative complaint must plead facts *specific to each director*" and cannot rely on allegations relating to the board as a whole.) (emphasis in original).

Instead of including particularized factual allegations as Rule 23.1 requires, Plaintiffs resort to non-sequiturs, arguing that the "Board's" "commit[ment]" to increasing diversity *must be* false "regardless of whether Oracle's Governance Committee . . . ever made any efforts to recruit any Black individuals and other minorities to the Board [because] no Black individuals

currently serve on the Board." (*Id*. ¶ 120.)  That is illogical and wholly unsupported.  Plaintiffs ignore that these challenged statements addressed both racial ***and*** gender diversity broadly, and were not specific to race, much less to one particular racial group.  At the time the statements were made, Oracle's Board included Garcia-Molina, who was Mexican-American, and three women, including the CEO.  Further, Oracle *did increase* diversity in its Board, as Oracle added a new female director in 2019 and a new director of Indian descent in 2020.  Oddly, Plaintiffs assert claims against these Directors as well, claiming that they are liable for statements made before they joined the Board, about the Board's commitment to seeking to recruit diverse members.  That Oracle's Board did not include "a single African American director" (*id*. ¶ 1) in the two years Plaintiffs choose to attack does not mean that Oracle's Board did not value "a diversity of backgrounds, experience, perspectives and leadership in different fields," as expressed in the Proxies.  (*Id*. ¶ 118.)

Second, the Ninth Circuit has held that statements of corporate commitments, like those here, are not actionable.  *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017); *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1072-73 (C.D. Cal. 2012) (statement regarding company's commitment to "maintaining best practices" not actionable).  *Retail Wholesale* is directly on point.  There, the plaintiffs alleged that the defendant's statements about its "commitment" to "doing the right thing" and "conducting business consistent with [] high ethical standards" were misleading because the company's CEO was under investigation for sexual harassment and submission of false expense reports.  *Retail Wholesale*, 845 F.3d at 1276-77.  The Ninth Circuit held that the statements were not actionable because they were "inherently aspirational" and "not capable of objective verification."  *Id*. at 1276.  The Ninth Circuit explained that liability for such statements "is simply untenable, as it could turn all corporate wrongdoing into securities fraud."  *Id*.  That applies with even more force here, where Plaintiffs have not pointed to *any* wrongdoing.  The Challenged Statements express that Oracle "value[d] a diversity of backgrounds," was "committed to actively seeking women and minority" director candidates, and "aim[ed] to achieve equity" through its employee hiring, promotion, and compensation.  As in *Retail*

1  *Wholesale*, these statements simply "emphasize a desire to commit to certain 'shared values'" and

2  are not actionable as a matter of law.  *Id*.  In any event, as discussed, Oracle has gone far beyond

3  a mere "commitment" to diversity; it has successfully and consistently recruited women and

4  people of color to serve on the Board.

5  Third, Plaintiffs fail to explain how the challenged statements could have "affirmatively

6  create[d] an impression of a state of affairs that differ[ed] in a material way from the one that

7  actually exist[ed]," *Brody*, 280 F.3d at 1006 (citation omitted), when the racial and gender

8  composition of Oracle's Board was readily apparent to shareholders.  Proxy Statements are

9  intended to provide shareholders with information in advance of Oracle's annual stockholder

10  meeting.  And that is exactly what the Proxies did here, identifying each director and candidate

11  for the Board.  Shareholders were then free to draw any conclusions about Oracle's commitment

12  to diversity on the Board before casting their votes to elect their directors.  *See Basic Inc. v.*

13  *Levinson*, 485 U.S. 224, 234 (1988) (the securities laws do not "assume[] that investors are

14  nitwits" or "attribute to investors a child-like simplicity"); *Paskowitz v. Pac. Capital Bancorp*,

15  No. CV 09-6449 ODW (JCX), 2009 WL 4911850, at *6 (C.D. Cal. Nov. 6, 2009) ("Securities

16  laws do not require disclosure of information that is readily available in the public domain.").

17  Fourth, Plaintiffs have not made ***any*** particularized allegations about Oracle's employee

18  hiring, promotion, or pay practices at the time of the challenged statements.  Plaintiffs' allegations

19  rest on recycled allegations from the DOL's (debunked) 2017 lawsuit (Compl. ¶¶ 80, 83-88); a

20  2015 survey of Oracle's employment data (*id.* ¶ 79); and a class action filed in 2017 (*id.* ¶¶ 81-

21  82).  These allegations say nothing about Oracle's hiring, pay, or promotion practices in

22  September 2018 and September 2019 when the Proxies were filed.  Plaintiffs, therefore, have not

23  met their burden to plead "*contemporaneous* statements or conditions" showing the "misleading

24  nature of the statements *when made*."  *Ronconi*, 253 F.3d at 432 (emphasis added).

25  Finally, Plaintiffs' arguments about a failure to disclose allegedly discriminatory "hiring,

26  pay, and promotion processes" are nothing more than an attempt to require Oracle to admit

27  unproven and false allegations that the Company vigorously and successfully defeated.  Investors

28  were free to evaluate the publicly available allegations the Complaint cites from the DOL

Litigation or elsewhere.  Oracle was not required to engage in "self-flagellation" and endorse the unproven—and contested—positions of adverse parties in ongoing litigation.[12]  *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019); *see also PayPal*, 2018 WL 466527, at *3 ("Federal securities laws do not impose upon companies a 'duty to disclose . . . unadjudicated wrongdoing'"); *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (same).[13]

> **(ii)** **Plaintiffs fail to plead that the Officer Directors' statements of opinion made about shareholder proposals were materially false or misleading.**

Plaintiffs allege that the Officer Directors made false statements opposing shareholder proposals regarding (a) the implementation of director term limits (Compl. ¶ 121); (b) the appointment of an independent Board chair (*id*. ¶¶ 138-40); and (c) the preparation of a "pay equity report" (*id*. ¶¶ 125-27.  Plaintiffs allege these statements of opinion and belief were materially false and misleading because the Officer Directors actually opposed these proposals and wanted to "keep minorities off the Board" and "conceal existing, known, and glaring pay disparity at the Company."  (*Id*. ¶ 143.)  Plaintiffs fail to support their conclusory assertions with particularized facts, as Rule 23.1 requires.

Where, as here, a plaintiff claims that a statement of opinion was misleading because the speaker "did not genuinely believe" it (*id*. ¶ 143), the plaintiff must plead particularized facts showing that "the speaker did not hold the belief she professed ***and*** that the belief [was] objectively untrue."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (citation omitted) (emphasis added); *see also Omnicare,*

---

[12] In addition, proven or unproven allegations do not show that the Officer Directors did not sincerely believe the veracity of the Challenged Statements.

[13] Plaintiffs' conclusory allegation that Oracle violated proxy disclosure requirements, particularly Item 407(c)(2)(vi) of Regulation S-K, also lacks merit.  (Compl. ¶¶ 114-16.)  That regulation requires companies to disclose whether, and if so how, diversity is considered when identifying director nominees and leaves it to the company to define diversity, which may include, among other things, a diversity of viewpoints, experience, education, race, gender, and national origin.  The Complaint admits that Oracle's Proxies disclosed that Oracle incorporates such considerations and that it "is committed to actively seeking women and minority candidates" as director nominees.  (*Id*. ¶¶ 118, 151.)  Thus, as required, Oracle disclosed whether and how the Board considers diversity.

1   *Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

2        Plaintiffs come nowhere close to meeting this burden.  Plaintiffs do not, for example,

3   plead any particularized facts showing the subjective and objective falsity of the Officer

4   Directors' statements that "imposing limits on director tenure would arbitrarily deprive [the

5   Board] of the valuable contributions of its most experienced members," that "publication of a pay

6   equity report . . . would be costly and time-consuming," or that "an independent chair is [not]

7   necessary to ensure that the Board provides independent and effective oversight."  (Compl.

8   ¶¶ 126, 139, 152.)  With respect to the former, Plaintiffs contend only that "leading academics"

9   have "demonstrated" that "longer-tenured directors do not serve the best interest of the

10  Company."  (*Id*. ¶ 122.)  But that some "leading academics" may disagree with the opinions

11  expressed in the Proxies is irrelevant to whether the Officer Defendants actually believed the

12  opinions they expressed.  Moreover, the article Plaintiffs cite says nothing about the opinions of

13  "leading academics"—it merely reports the results of a ***survey*** of ***investors***, some of whom stated

14  that a "high proportion" of directors with long tenure on a corporate board could serve as a "cause

15  of concern."  (*Id*.)  And the survey had nothing to do with Oracle specifically.

16       Pointing to the DOL lawsuit and litigation involving HP, Plaintiffs assert that "Oracle's

17  best interests were not being adequately protected by Ellison serving as Chairman."  (*Id.*

18  ¶ 143(f).)  That, too, falls flat as it does not show the subjective or objective falsity of the

19  Directors' statement about the appointment of an independent Board chair.  In any event, both of

20  these litigation matters were public knowledge, which shareholders were free to consider.

21  *See Align*, 856 F.3d at 615 (opinion statements must be evaluated "fairly and in context,"

22  including consideration of "apparently conflicting information" known to investors).

23       As for the pay equity report proposal, Plaintiffs argue that the Board's consideration (and

24  eventual rejection) of that shareholder proposal in 2017, 2018, and 2019 somehow shows that the

25  Board did not genuinely have a commitment to diversity.  (Compl. ¶ 127.)  In support, Plaintiffs

26  point to Board minutes and resolutions that Plaintiffs allege show that "the Board summarily

27  voted to oppose" the proposal for a pay equity report and "approved a pre-drafted statement,"

28  rather than reviewing the internal pay equity data for themselves.  (*Id*. ¶¶ 128-34.)  That is not

1    true either.  Rather than summarily denying the proposals, the "Board members asked questions

2    and discussed" the stockholder proposal.  (Hill Decl., Ex. A.)[14]  In any event, the law is clear:

3    Defendants did not need personally to review the internal data because "directors of Delaware

4    corporations are fully protected in relying in good faith on the reports of officers and experts."  *In*

5    *re Citigroup S'holder Deriv. Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009).  Lastly, even if the Board

6    did summarily vote to oppose the shareholder proposal (and it did not), that would not show that

7    the Directors did not genuinely believe that "the creation and publication of a pay equity report

8    . . . would be costly and time-consuming and [that it] . . . would not lead to meaningful gains" in

9    diversity or gender pay equity because there "does not appear to have [been] any additional

10    beneficial effect" for those "few global companies [that] have publicized their internal pay

11    data[.]"  (Compl. ¶¶ 55, 126.)

12         Notably, Plaintiffs do not even attempt to show the state of mind of each Officer Director,

13    as would be necessary to show that the Officer Directors "did not hold the belief" they expressed

14    when they made each challenged statement.  To the contrary, Plaintiffs expressly disclaim any

15    allegation of "knowing or reckless conduct by Defendants" in connection with Plaintiffs'

16    Exchange Act claims.  (*Id*. ¶ 318.)  As a result, Plaintiffs have "effectively pleaded themselves

17    out of" alleging a false opinion statement under *Omnicare* and *Align*.  *In re Velti PLC Sec. Litig.*,

18    No. 13-CV-03889-WHO, 2015 WL 5736589, at *18 (N.D. Cal. Oct. 1, 2015); *see Omnicare*,

19    575 U.S. at 186 (noting that plaintiffs "do not contest that Omnicare's opinion was honestly held.

20    Recall that their complaint explicitly 'exclude[s] and disclaim[s]' any allegation sounding in

21    fraud or deception.").  In addition, Plaintiffs' scienter allegations fail because they rely on

22    impermissible group pleading.  *See Desimone*, 924 A.2d at 943; (*see, e.g.*, ¶ 140 ("[T]he Director

23    Defendants did not genuinely believe" the Challenged Statements and "The Individual

24

---

25    [14] Without explaining why it matters, Plaintiffs also allege that in response to the
     Section 220 request, Oracle did not produce any Compensation Risk Assessment reports for the
26    years 2016 through 2019.  (Compl. ¶ 135.)  That is irrelevant to this action, and the absence of
     such evidence does not transform Plaintiffs' unsupported factual assertions into particularized
27    allegations sufficient to withstand a motion to dismiss under Rule 23.1.  Similarly, the Court
     should reject Plaintiffs' claim that anything of import can be inferred from Oracle not producing
28    2019 documents in its Section 220 production.  (*Id.* ¶ 136.)

1    Defendants actually believed that . . .").

2                    **c.    Plaintiffs fail to plead particularized facts giving rise to a
                                strong inference of negligence.**
3

4           Plaintiffs also fail to establish a substantial likelihood of liability for the Section 14(a)

5    claims because the Complaint lacks particularized "facts that give rise to a strong inference of

6    negligence" as to each Officer Director—a separate and independent element of Plaintiffs' claim.

7    *McKesson HBOC*, 126 F. Supp. 2d at 1267; *In re VeriSign, Inc., Deriv. Litig.*, 531 F. Supp. 2d at

8    1213 (dismissing Section 14(a) claim due to failure to show "the required state of mind with

9    particularity as to each defendant").  The conclusory allegation that "Defendants negligently

10   issued, caused to be issued, and participated in the issuance" of the Proxies (Compl. ¶ 320) falls

11   far short of meeting Plaintiffs' burden.  *McKesson HBOC*, 126 F. Supp. 2d at 1267.

12                   **d.    Plaintiffs fail to plead particularized facts showing that
                                the Proxies caused any cognizable loss.**
13

14          "Under § 14(a), a plaintiff must demonstrate that the allegedly misleading proxies caused

15   it both to engage in the transaction in question (i.e., transaction causation or the essential link

16   requirement) and to suffer economic harm (i.e., loss causation)."  *City of Birmingham Relief &*

17   *Ret. Sys. v. Hastings*, No. 18-CV-02107-BLF, 2019 WL 3815722, at *15 (N.D. Cal. Feb. 13,

18   2019).  Plaintiffs have not done either.

19          To satisfy the essential link requirement, Plaintiffs must plead particularized facts

20   showing that the alleged misstatements or omissions in the Proxies were an "essential link in the

21   accomplishment of the proposed transaction."  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022

22   (9th Cir. 2000).  The essential link requirement can "only be established when the proxy

23   statement at issue *directly authorizes* the loss-generating corporate action."  *Kelley v. Rambus,*

24   *Inc.*, No. C 07-1238JFHRL, 2008 WL 5170598, at *7 (N.D. Cal. Dec. 9, 2008) (emphasis in

25   original); *see also PayPal*, 2018 WL 466527, at *4 (compiling cases).  Merely alleging that "the

26   reelection of the directors was an essential link to loss-generating corporate action because of the

27   directors' subsequent mismanagement *cannot form the basis of liability under Section 14(a).*"  *In*

28   *re Diamond Foods, Inc. Deriv. Litig.*, No. C 11-05692 WHA, 2012 WL 1945814, at *7 (N.D.

1   Cal. May 29, 2012) (emphasis added).

2          Plaintiffs allege that the purportedly misleading statements in the Proxies "interfer[ed]

3   with" Oracle's "governance" and the "stockholders' informed voting of directors," causing

4   stockholders to "re-elect all of the Defendants" and vote against shareholder proposals about

5   director term limits and an independent chair of the Board.  (Compl. ¶¶ 144-47, 155.)  Plaintiffs

6   contend that Oracle was "harmed" as a result because "[h]ad shareholders known of the

7   underlying misconduct at the Company, they would not have voted to keep the same Directors

8   who were allowing the illegal practices to continue."  (Compl. ¶ 147.)  Courts have routinely

9   found these exact types of allegations insufficient to establish Section 14(a)'s requisite "essential

10  link."  *See, e.g.*, *PayPal*, 2018 WL 466527, at *4; *In re Diamond Foods*, 2012 WL 1945814, at

11  *7; *In re HP Deriv. Litig.*, No. 5:10-CV-3608 EJD, 2012 WL 4468423, at *11 (N.D. Cal. Sept.

12  25, 2012).

13         Nor have Plaintiffs adequately alleged loss causation.  That requires "connect[ing] the

14  proxy misstatement with an actual economic harm."  *Jobs*, 593 F.3d at 1023.  Plaintiffs must

15  show "that the defendant 'caused the loss for which the plaintiff seeks to recover damages.'"

16  *Hastings*, 2019 WL 3815722, at *15.  Plaintiffs have not explained how costs incurred for

17  "hir[ing] new employees" (a standard practice for any company) and "defending and settling

18  governmental investigations" and "discrimination lawsuits" harmed shareholders.  (Compl.

19  ¶ 230.)  In fact, Plaintiffs do not allege any discrimination lawsuit that Oracle settled.  Nor have

20  Plaintiffs explained how shareholders were harmed by Oracle *defeating the DOL's discrimination*

21  *lawsuit* or receiving a letter from Congress.  In any event, courts have held that speculative

22  injuries such as those Plaintiffs allege here are insufficient to establish loss causation.  *See, e.g.*,

23  *Hastings*, 2019 WL 3815722, at *15.  The same goes for Plaintiffs' assertion that the Director

24  Defendants' actions harmed Oracle's reputation and goodwill.  *Id.*; (*see* Compl. ¶¶ 229-30).

25  Further, Plaintiffs have failed to show that any of the challenged statements *proximately caused*

26  those alleged injuries.

27         Plaintiffs' failure to meet their burden on these elements, like their failure on each other

28  Section 14(a) element, is an independent basis for dismissal under Rule 23.1.

1

### 2.     The Officer Directors Do Not Face a Substantial Likelihood of Liability for Breach of Fiduciary Duty.

2

3       Based on the same Challenged Statements discussed above, Plaintiffs also allege that the

4   Officer Directors face a substantial likelihood of liability for breach of fiduciary duty.  (Compl.

5   ¶¶ 238-39.)  That fails, too, for the same reasons.  Plaintiffs have not shown the Proxies contained

6   any false or misleading statement.  And, "[u]nder Delaware law, the standard of care applicable to

7   the fiduciary duty of care of a director or officer is gross negligence."  *Buckley Family Tr. v.*

8   *McCleary*, No. CV 2018-0903-AGB, 2020 WL 1522549, at *10 (Del. Ch. Mar. 31, 2020).  Just as

9   Plaintiffs' allegations do not give rise to an inference of negligence, they do not show "*gross*

10  *negligence*"—conduct "constitut[ing] reckless indifference or actions that are without the bounds

11  of reason."  *Id.*[15]

12

### C.     Plaintiffs Do Not Plead Particularized Facts Showing That a Majority of the Board Lacks Independence from an "Interested" Director.

13

14      Because Plaintiffs have not shown that any Director Defendant is "interested," the Court

15  need not consider Plaintiffs' independence allegations.  *See McElrath*, 224 A.3d at 991.  But even

16  if Plaintiffs had adequately alleged that the three Officer Directors (or any other Director) face a

17  substantial likelihood of liability (they have not), Plaintiffs would still need to show that a

18  majority of the Board—i.e., seven out of fourteen—could not independently and disinterestedly

19  consider a demand.  In other words, Plaintiffs must still show that at least four Outside Directors

20  are not independent of the Officer Directors.  Plaintiffs have not done so.

21      The test for independence is not whether a plaintiff can allege an attenuated connection

22  between a director and an allegedly interested party, but rather whether the complaint presents

23  particularized facts showing that the director is "subject to the interested party's dominion or

24  beholden to that interested party."  *McElrath*, 224 A.3d at 995.

25      In an attempt to satisfy that standard, Plaintiffs raise two arguments.  First, Plaintiffs make

26

27      [15] As discussed below, the standard for holding the Outside Directors liable for a breach of fiduciary duty is greater still.  To do so, Plaintiffs must show that the Outside Directors violated their duty of loyalty by acting in *bad faith*.  *See infra* 29-33.

28

1   conclusory allegations that demand is futile because Ellison controls the Company and its Board.

2   (Compl. ¶¶ 241-56.)  Second, Plaintiffs argue that a majority of Oracle's Outside Directors have

3   material ties to Ellison, rendering them incapable of assessing a demand.  (Compl. ¶¶ 259-98.)

4   Both arguments lack merit.

5                    **1.       Because Ellison Is Not "Interested," the Court Need Not
                             Determine Whether the Other Directors Are Independent.**

6

7          Plaintiffs contend that demand on the Board would have been futile because Ellison faces

8   a substantial likelihood of liability and because a majority of the Outside Directors lack

9   independence from Ellison.[16]  (Compl. ¶¶ 238-56.)  But "[i]n the absence of a showing that one or

10  more board members is disqualified as interested, there is no reason to evaluate whether any

11  remaining board member would be so beholden to that person or persons as to be unable to

12  exercise independent judgment." *In re Oracle Corp. Derivative Litig.*, 2011 WL 5444262, at *6.

13  That is the case here.  For all the reasons discussed above, Ellison, who Plaintiffs allege controls

14  the Outside Directors, does not face a substantial likelihood of liability for any cause of action.

15  The Complaint does not assert that Ellison committed any discriminatory act.  Nor does it allege

16  anything whatsoever about Ellison's role on the Governance Committee—he is not a member of

17  the committee—or about Ellison's involvement in identifying the pool of candidates from which

18  directors are selected.  Plaintiffs can therefore not show that Ellison faces a substantial likelihood

19  of liability for Plaintiffs' Section 14(a) or breach of fiduciary duty claims.  And Ellison cannot

20  face a substantial likelihood of liability for breach of fiduciary duty regarding the HP dispute

21  because, as discussed below, among other reasons, that cause of action is barred by the statute of

22  limitations.[17]

23         Accordingly, because Plaintiffs have not shown that Ellison is interested, the Court may

24  dismiss this case in its entirety under Rule 23.1 without reaching the issue of the Outside

25

26         [16]  Though Plaintiffs allege that the Outside Directors are also not independent of Catz and
    Henley (Compl. ¶¶ 237, 241), Plaintiffs include no allegations about why that is so.

27         [17] Plaintiffs also do not allege that Ellison is interested or conflicted for having been on
28  the other side of the HP dispute (because he was not) or, for that matter, any other transaction.

Directors' independence.  *See Rales*, 634 A.2d at 936; *In re Oracle*, 2011 WL 5444262, at *6.

> **2.**     **Plaintiffs Fail to Plead That Ellison Controls Oracle's Board.**

In any event, even if Ellison were interested (he is not), Plaintiffs cannot show he controls Oracle's Board.  Plaintiffs suggest that Ellison's share ownership and long history with the Company—combined with various snippets and anecdotes—show that he controls Oracle and its Board.  (Compl. ¶¶ 241-56.)  Delaware has long rejected such conclusory allegations that one defendant "dominated and controlled directors."  *Aronson*, 473 A.2d at 816.  Even "overwhelming voting control" and stock ownership "does not excuse pre-suit demand on the board without particularized allegations of relationships between the directors and the controlling stockholder demonstrating that the directors are beholden to the stockholder."  *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1054 (Del. 2004) (rejecting lack of independence argument where Martha Stewart held 94% of stock of her eponymous company).  So, in the context of a minority shareholder such as Ellison (*see* Compl. ¶ 243), Plaintiffs must show ***actual*** domination and control of the Board.  *See In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 995 (Del. Ch. 2014).

Plaintiffs' generalized and vague allegations and anecdotes, relying on dated hearsay— primarily sourced from a 17-year-old biography of Ellison—say nothing about Ellison's purported control over the current Board members.  (Compl. ¶¶ 244-48.)[18]  For example, even if it were true that Ellison "created Oracle in his own image" decades ago, that says nothing about whether he exercised ***actual*** domination over the Board at the time the Complaint was filed.  (Compl. ¶ 244.)  Nor do Plaintiffs say why it matters that a former marketing executive thinks of Ellison as "a spiritual guru."  (Compl. ¶ 245.)  As the Delaware Supreme Court noted in this context, "hearsay and hyperbole . . . are no substitute for pleading particularized facts to meet the plaintiff's heightened pleading burden."  *McElrath*, 224 A.3d at 996 n.77.

Plaintiffs say Ellison could remove directors at will, but the only example offered is a director whose role on the Board was tied to his status as Chief Operating Officer.  (Compl.

---

[18] Plaintiffs also rely on a different 2003 biography of Ellison and a 2006 *Forbes* article (Compl. ¶¶ 250, 261).

¶ 248.)  That then-CEO Ellison had the power (decades ago) to remove a subordinate officer is neither surprising, nor indicative of present Board domination.  Indeed, the Delaware Supreme Court recently held that even allegations showing that a defendant has the power to appoint and remove an *outside director* at will are insufficient.  *McElrath*, 224 A.3d at 996.

The only allegation of "domination" that in any way relates to a member of the current Board is a quote attributed to Berg, who allegedly stated in 2008:  "I guess as a founder, owner, operator, you can equate [Ellison] to the owner of a team who can sit up in a skybox and own the franchise."  (Compl. ¶ 253.)  Plaintiffs conclude that this statement shows "that the Board is subservient to Ellison."  (Compl. ¶ 254.)  But conclusions are not particularized facts.  The law requires the latter.

Finally, Plaintiffs appear to allege that the Outside Directors are not independent of Ellison because they "knowingly endorsed and approved Ellison's baseless lawsuit with HP."  (Compl. ¶ 257.)  But the Complaint is entirely silent about when or what the Outside Directors knew about Oracle's agreement with HP, the merits of either company's position, or Ellison's role in the subsequent alleged breach.  In fact, the Complaint only alleges that "Demand is futile as to the Director Defendants" because the judgment against Oracle "may be material from a financial point of view," the "Company continues to refuse to take a reserve on its balance sheet," and "[a]ll Director Defendants have served on the Board" at some point since June 15, 2011, when the lawsuit with HP began (Compl. ¶¶ 257, 258).  None of that speaks to the Outside Directors' knowledge of alleged wrongdoing.  More importantly, Plaintiffs do not even try to explain how those allegations show the Outside Directors *currently* lack independence from Ellison.[19]

---

[19] Notably, no Director faces any liability for breach of fiduciary duty based on the HP dispute.  Delaware law establishes a three-year statute of limitations for fiduciary duty claims. 10 Del. C. § 8106.  Here, Plaintiffs allege that it was publicly known in 2010 that Ellison "hated the HP board" (Compl. ¶ 194); that the legal dispute with HP began that same year (*id.* ¶¶ 187-92); and that a jury found against Oracle on June 30, 2016 (*id.* ¶ 204).  Plaintiffs did not file their complaints until July 2020, far longer than three years after "the time of the alleged wrongful act."  Plaintiffs' claims are, therefore, time barred.

1

### 3.     Plaintiffs Fail to Sufficiently Plead That Oracle's Outside Directors Are Incapable of Considering a Demand Based on Their Alleged Ties to Ellison.

2

3     **Outside Directors Fairhead, Moorman, Parrett, and Sikka are independent**.  The

4   Complaint is silent as to the independence of Outside Directors Fairhead, Moorman, Parrett, and

5   Sikka.  Thus, Plaintiffs concede that these directors are capable of considering a demand.[20]

6     **Outside Directors Boskin and Chizen are independent**.  Plaintiffs make only

7   conclusory allegations about the independence of Boskin and Chizen.  First, Plaintiffs state that

8   these directors lack independence due to the compensation they receive as Oracle directors.

9   (Compl. ¶¶ 281-82, 287-88.)  Plaintiffs do not, however, allege facts showing that Ellison could

10  unilaterally affect Boskin's or Chizen's compensation, or that their Oracle compensation was

11  material to them personally.  Both showings are required to establish a lack of independence

12  based on director compensation.  *See MCG Capital*, 2010 WL 1782271, at *20.  Second,

13  Plaintiffs allege that these directors lack independence due to their ties with Stanford University.

14  (Compl. ¶¶ 283-85, 289.)  Unsurprisingly, Plaintiffs do not allege any facts to support the

15  contention that any and all ties to a university that Ellison supports render a director conflicted.[21]

16  Finally, Plaintiffs assert Boskin is a "personal friend of Ellison."  (Compl. ¶ 286.)  Delaware law

17  is clear, however, that "a characterization" of "close friends[hip], is not enough to negate

18  independence for demand excusal purposes."[22]  *Beam*, 845 A.2d at 1051-52.

19

20    [20] While Plaintiffs offer allegations as to Hector Garcia-Molina's connections to Ellison (Compl. ¶¶ 290-93), Garcia-Molina passed away a year before the Complaint was filed.

21    [21] The Complaint references a Delaware Court of Chancery opinion, *In re Oracle Corp.*

22  *Deriv. Litig.*, 824 A.2d 917 (Del. Ch. 2003), in which the court found that a special litigation committee had not met its burden of proving its independence where two of the three committee

23  members were Stanford University professors who had recently been recruited to the board by two other board members (a Stanford professor and an alumnus) who were targets of the

24  committee's investigation.  This reference ignores the unique facts of that case, and the relevant law.  In the context of a special litigation committee's motion to terminate a derivative action, *the*

25  *committee* bears the burden of proving its own independence.  *Id.* at 929.  For the purposes of this Rule 23.1 motion, Delaware law presumes the exact opposite—that directors will be "faithful to

26  their fiduciary duties," *Beam*, 845 A.2d at 1048-49, and *Plaintiffs* bear the burden of pleading particularized facts "to overcome that presumption." *Id.*

27    [22] The Complaint also alleges that Boskin made a $500,000 donation to the UC Davis

28  Health System, the same hospital that treated Ellison following a bicycle crash, and that Ellison allegedly brought sushi to Boskin following a car accident.  (Compl. ¶ 286.)  Acts of kindness

**Outside Director Panetta is independent**.  Other than threadbare allegations regarding director compensation (Compl. ¶¶ 294-95), Plaintiffs' only allegation about Panetta is that he, as the director of the Central Intelligence Agency, assisted with the production of the 2012 film *Zero Dark Thirty*, which was allegedly funded by Ellison's daughter.  (Compl. ¶¶ 296-97.)  As with Boskin and Chizen, Plaintiffs make no effort to plead that Panetta's director compensation is material to him.  And tenuous allegations of personal and outside business relationships are insufficient to raise a question as to director independence.  *See Beam*, 845 A.2d at 1051-52. Moreover, the alleged relationship here is not with any allegedly interested defendant, but rather with Ellison's adult daughter, who is a professional film producer.

**Outside Director Berg is independent**.  As to Berg, Plaintiffs again base their allegations on the receipt of director compensation.  (Compl. ¶¶ 276-77.)  Plaintiffs note that Berg has had a very successful 35-year career in the entertainment industry.  Nevertheless, Plaintiffs rely entirely on the website "buzzfile.com" to conclude that one of Berg's companies, Northside Services, LLC ("Northside") has annual revenues of approximately $200,000 and therefore his director compensation is material.  (Compl. ¶ 280.)  This source explicitly notes that its figure is an estimate and does not disclose the basis for the estimate.[23]  This source also erroneously states that Northside (per the Complaint, a "media and entertainment advisory firm" (¶ 278)) is engaged in "manufacturing, importing, and exporting."[24]  To state the obvious, the Court should disregard this unreliable source.  As with the other Outside Directors, lone allegations about Berg's wealth and unreliable assertions about his income do not meet Plaintiffs' burden under *MCG Capital*.

Plaintiffs' only other allegation as to Berg's independence is that he had a brief outside business relationship with Ellison's son in connection with the 2006 film *Flyboys*.  (Compl. ¶ 279.)  Plaintiffs do not allege any facts showing any longstanding or continuing business or personal relationship between them.  As discussed, mere allegations of outside business

---

between directors do not transform a relationship into co-dependence.  And Plaintiffs make no attempt to connect Boskin's donation to Ellison's treatment.

[23] *See* Northside Services, LLC, Buzzfile, http://www.buzzfile.com/business/Northside-Services,-LLC-424-274-4200 (last visited Jan. 11, 2020).

[24] *Id.*

1   relationships—this time with Ellison's son, 15 years ago—are insufficient absent a showing that

2   the relationship is *currently* a "particularly close" business affinity.  *Beam*, 845 A.2d at 1051-52.

3              <u>**A majority of Directors are independent and disinterested, so demand is not excused**</u>.

4   Plaintiffs cannot meet their burden of showing that at least four Outside Directors lack

5   independence, as Plaintiffs have not pled particularized facts showing that any of the eight

6   Outside Directors discussed above lack independence.[25]  Because Plaintiffs have also failed to

7   show that any Outside Director is interested, demand is not excused, and this action should be

8   dismissed under Rule 23.1.

9       **II.     THE COURT SHOULD ALSO DISMISS EACH CAUSE OF ACTION**
            **UNDER RULE 12(b)(6).**
10

11          In addition to failing to establish that demand should be excused under Rule 23.1,

12   Plaintiffs fail to adequately state any claim against the Director Defendants.  Accordingly, the

13   Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

14          To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

15   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

16   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But "labels

17   and conclusions, and a formulaic recitation of the elements of the cause of action will not do."

18   *Twombly*, 550 U.S. at 555 (citation omitted).  Instead, Plaintiffs must allege non-conclusory

19   "factual content that allows the court to draw the reasonable inference that the defendant is liable

20   for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d

21   992, 998 (9th Cir. 2010).  The Complaint does not meet this burden for any of its claims.

22          **A.     The Complaint Fails to State a Section 14(a) Claim.**

23          For the same reasons that Plaintiffs' Section 14(a) claim fails under Rule 23.1, it also fails

24   under Rule 12(b)(6).[26]  *See In re Oracle*, 2011 WL 5444262, at *6 n.12 (explaining that the Rules

25          [25] Defendants do not concede that James, Conrades, and Seligman are not independent.
26   Rather, because Plaintiffs have failed to show that a majority of the Director Defendants are
     either interested or not independent, the Court need not reach the independence issue for those
27   three Directors.

28          [26] Additionally, the Section 14(a) claim based on the 2018 Proxy is time barred.  As
     relevant here, the limitations period for a Section 14(a) claim is one year after discovery of the

1   12(b)(6) and 23.1 analyses "largely overlap"; holding that claims should be dismissed under

2   Rule 12(b)(6) for the same reasons that subjected them to dismissal under Rule 23.1).

3   **B.     The Complaint Fails to State a Fiduciary Duty Claim.**

4        Plaintiffs also fail to state a breach of fiduciary duty claim.  Delaware directors owe only

5   two fiduciary duties:  care and loyalty.  *See, e.g., In re Walt Disney Co. Deriv. Litig.*, 907 A.2d

6   693, 745 n.400 (Del. Ch. 2005) ("The Delaware Supreme Court has been clear that outside the

7   recognized fiduciary duties of care and loyalty (and perhaps good faith), there are no other

8   fiduciary duties.").  Under Delaware law, directors and officers are protected in carrying out these

9   duties by, among other things, the business judgment rule and statutory limitations on liability.

10  *See, e.g.*, *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 125.  The business judgment

11  rule is a powerful "presumption that in making a business decision the directors of a corporation

12  acted on an informed basis, in good faith and in the honest belief that the action taken was in the

13  best interests of the company."  *Aronson*, 473 A.2d at 812.

14       In addition, Oracle's Certificate of Incorporation exculpates the Director Defendants from

15  liability for breaches of fiduciary duty "[t]o the fullest extent permitted by Delaware law."  (Hill

16  Decl., Ex. C at 11.)  Relevant here, 8 Del. C. § 102(b)(7) allows Oracle to "exculpate directors

17  from monetary liability for a breach of the duty of care, but not for conduct that is not in good

18  faith or [is] a breach of the duty of loyalty."  *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911

19  A.2d 362, 367 (Del. 2006); *see also* 8 Del. C. § 102(b)(7).  Thus, the Director Defendants may be

20  liable only for breaches of the duty of loyalty, acts in bad faith, intentional misconduct, or

21  knowing violation of the law.  *See Wood*, 953 A.2d at 141.  "Negligent or even reckless conduct

22  is insufficient."  *PayPal*, 2018 WL 466527, at *3.  The conclusory allegations here do not come

23  ───────────────

     alleged violation.  *See In re VeriSign, Inc. Deriv. Litig.*, 531 F. Supp. 2d at 1212.  Oracle faced

24   discrimination allegations in the DOL Litigation (Compl. ¶¶ 80, 128) and the *Jewett* Action (*id.*
     ¶¶ 81, 128) *before* filing its 2018 Proxy on September 26, *2018*.  Plaintiffs' reliance on those

25   publicly-available allegations means that their right to raise a Section 14(a) claim based on the
     2018 Proxy expired on September 26, *2019*.  Thus, each of Plaintiffs' complaints was filed almost

26   a whole year late, in July *2020*.  *See Stricklin v. Ferland*, No. CIV.A. 98-3279, 1998 WL 966023,
     at *4 (E.D. Pa. Nov. 10, 1998) (Section 14(a) claim time barred where "the underlying facts

27   which made the[] two proxies misleading were known to the plaintiff" more than a year before
     the complaint was filed).

28

anywhere near showing disloyalty, bad faith, intentional misconduct, or knowing violation of the law.

The Complaint alleges that the Director Defendants breached their fiduciary duties by (1) failing "to ensure diversity on the Board" (Compl. § VII.E); (2) "failing to ensure the Company's compliance with federal and state laws regarding diversity and anti-discrimination" (Compl. § VII.F); (3) "fail[ing] to ensure an independent chairman" (Compl. § VII.G); (4) "continually rehiring Ernst & Young as the Company's auditor" despite Ernst & Young "wrongly and consistently giving Oracle's internal controls a clean bill of health" (Compl. § VII.H; ¶ 179); and (5) "allow[ing] Ellison to pursue his personal vendetta against Hewlett-Packard." (Compl. § VII.I.)

These are classic "*Caremark* claims," where the plaintiff alleges that the company's directors breached their fiduciary duties by "allow[ing] a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance." *Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). To properly plead a *Caremark* claim, a plaintiff must allege, "(1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of." *Caremark*, 698 A.2d at 971. Plaintiffs must demonstrate that the Director Defendants "consciously disregarded" their duty to address misconduct, and that the Board's "bad faith" proximately caused a "corporate trauma." *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, No. 10872-VCMR, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016); *see also Walther v. ITT Educ. Servs., Inc.*, No. CV 8273-MA, 2015 WL 545331, at *15 (Del. Ch. Feb. 10, 2015), *adopted*, (Del. Ch. Feb. 25, 2015) ("One of the required elements of a *Caremark* claim is loss or harm to the corporation."). Delaware courts have described a "*Caremark* claim" as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Stone*, 911 A.2d at 372.

The Complaint does not come close to meeting that stringent standard.[27]

### 1.    The Complaint Fails to Plead Harm to Oracle.

Plaintiffs' *Caremark* claim falters at the outset because the Complaint does not plead any cognizable harm or "corporate trauma" to Oracle.  *Melbourne*, 2016 WL 4076369, at *8.  In the 113-page Complaint, the only non-speculative harm Plaintiffs allege is the cost of defending against lawsuits.  (Compl. ¶ 224.)  But the only lawsuits mentioned in the Complaint are (1) the DOL Litigation; (2) the *Jewett* Action; and (3) the Hewlett Packard litigation.  None of this constitutes legally cognizable harm.

First, as discussed, Oracle ***won*** the DOL Litigation.  Common sense dictates that the Directors cannot be liable for harming Oracle by authorizing the Company to defend itself against a lawsuit in which it prevailed.

Second, the *Jewett* Action is ongoing, and therefore cannot serve as a basis for a loss.  Courts routinely hold that "derivative claims are foreclosed when they merely allege damages based on the *potential* costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct."  *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006) (emphasis added); *see also Daisy Sys. Corp. v. Finegold*, No. C86-20719-SW, 1988 WL 166235, at *4 (N.D. Cal. Sept. 19, 1988) (dismissing derivative claims as speculative because "the mere filing of lawsuits cannot provide a factual predicate for alleging damages"); *In re Facebook, Inc., IPO, Sec. & Deriv. Litig.*, 922 F. Supp. 2d 445, 473-75 (S.D.N.Y. 2013) ("Plaintiffs' damage allegations based on potential costs of the [securities] class action suits are insufficient to state a claim for relief.").

---

[27] *Caremark* also allows a plaintiff to plead that "the directors utterly failed to implement any reporting or information system or controls." *Stone*, 911 A.2d at 370.  Plaintiffs cannot meet that standard either.  The Complaint *concedes* that Oracle had numerous relevant internal policies and controls.  (*See* Compl. ¶ 158 (Nominating and Governance Committee charged with "monitoring corporate governance matters, including periodically reviewing the composition and performance of the Board and its committees"), ¶¶ 50-51 (Corporate Governance Principles require Directors to avoid "discriminatory practices of any kind"), ¶¶ 179-80 (Oracle's outside auditors and Finance & Audit Committee charged with "assess[ing] the Company's internal controls and determining if they are functioning effectively")); *see In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1015 (N.D. Cal. 2015) (rejecting allegations of "inadequate" oversight where complaint conceded "existence of [the] Audit Committee, the Committee's duties, and [the company's] Code of Business Ethics and Conduct").

1    Lastly, any claim based on the 2016 judgment from the HP litigation is time barred by

2    Delaware's three-year statute of limitations for fiduciary duty claims.  *See* 10 Del. C. § 8106.  In

3    any event, that action remains on appeal.  (Compl. ¶ 205.)

4    The Complaint's failure to plead any harm from the Director Defendants' alleged

5    misconduct is an independent ground for dismissal.[28]

6    **2.    The Complaint Does Not Adequately Allege That the Director
         Defendants Consciously Failed to Monitor Oracle's Operations.**

7

8    The Complaint also fails to plead that the Director Defendants consciously failed to

9    monitor Oracle's operations.  To successfully plead a *Caremark* claim based on a failure to

10   monitor, Plaintiffs must plead "that there were so-called 'red flags' that put the directors on notice

11   of problems with their systems, but which were consciously disregarded."  *In re Gen. Motors Co.*

12   *Deriv. Litig.*, C.A. No. 9627-VCG, 2015 WL 3958724, at *16 (Del. Ch. June 26, 2015).

13   Lawsuits (like the DOL Lawsuit and the *Jewett* Action) and government inquiries (like the

14   Congressional letter) do not constitute "red flags" that a company engaged in misconduct.  *See*

15   *Marvin H. Maurras Revocable Tr. v. Bronfman*, No. 12 C 3395, 2013 WL 5348357, at *6 (N.D.

16   Ill. Sept. 24, 2013) (holding that lawsuits were not red flags); *In re Johnson & Johnson Deriv.*

17   *Litig.*, 865 F. Supp. 2d 545, 566 (D.N.J. 2011) (holding that federal subpoenas do not suggest the

18   board was aware of corporate misconduct but rather that the board was aware of an investigation);

19   *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 175 (D. Del. 2009) (same).  Nor do Plaintiffs

20   allege anything else that rises to the level of a red flag.  Plaintiffs' allegation that the Directors

21   "did nothing" in response to the lawsuits and the Congressional inquiry (Compl. ¶¶ 54, 56), only

22   reflects the Directors' "views that [Oracle's] business practices were not, in fact, violative of

23   any . . . laws."  *Melbourne*, 2016 WL 4076369, at *10.  Moreover, neither the DOL Lawsuit nor

24   the *Jewett* Action involved allegations about the *Board* discriminating against minority

25   ───────────────

26   [28] The Complaint's allegation that Oracle has suffered reputational harm is also
     insufficient as it is entirely speculative.  *See In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510,

27   517 (E.D.N.Y. 1991) ("boilerplate language" that "defendants' acts have undermined [the
     company's] credibility in the securities market and have jeopardized the continued public

28   acceptance and marketability of its stock to the injury of the Company" was "not sufficient to
     withstand a motion to dismiss").

1   candidates.  So, Board knowledge of those lawsuits does not constitute a red flag about the

2   conduct alleged in the Complaint.  *See In re Oracle*, 2011 WL 5444262, at *6 (director awareness

3   of similar issues in unrelated matters insufficient to show knowledge or reckless disregard of the

4   wrongdoing alleged in the complaint).[29]

5           **3.      The Complaint Fails to Plead a Breach of the Duty of Loyalty.**

6           To the extent Plaintiffs assert that their breach of fiduciary duty claim rests on alleged

7   breaches of the duty of loyalty (rather than a breach of the duty of oversight), that theory also

8   fails.  To plead a breach of the duty of loyalty, Plaintiffs must show that directors acted in bad

9   faith.  *See Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007) (citing *Stone*, 911 A.2d at 370).

10  That requires intentional unlawful conduct or conduct that "'demonstrates a faithlessness or lack

11  of true devotion to the interests of the corporation and its shareholders.'"  *Id*.  None of Plaintiffs'

12  conclusory allegations implicates any bad faith.[30]

13          **C.      The Complaint's Remaining State Law Claims Fail.**

14          **1.      The Complaint Fails to Plead a Claim for Aiding and Abetting.**

15          A Delaware aiding and abetting claim requires (1) an underlying breach of fiduciary duty

16  (i.e., the existence of a fiduciary relationship and a breach by the fiduciary); and (2) "knowing

17  participation in that breach by the non-fiduciary."  *Allied Capital Corp. v. GC-Sun Holdings, L.P.*,

18  910 A.2d 1020, 1039 (Del. Ch. 2006).  "[T]he test for stating an aiding and abetting claim is a

19  stringent one, turning on proof of scienter."  *Id*. at 1039.  This makes an aiding and abetting claim

20  "among the most difficult to prove."  *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 866 (Del.

21

22          [29] As discussed above, the Complaint also improperly relies on "group pleading," which is
    an independent basis for dismissal under Rule 12(b)(6).  (*See, e.g.*, Compl. ¶¶ 60-62, 194-96,

23  206); *see In re Sagent Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079, 1093 (N.D. Cal. 2003) (A
    complaint "cannot state a claim for breach of fiduciary duty in the absence of more specific

24  allegations regarding which defendants are alleged to have performed which acts.").

25          [30] For example, conclusory allegations that the Directors breached their "duty to ensure
    that the Chairman of the Board was independent" (Compl. § VII.F) do not implicate bad faith as

26  there is no requirement for an independent chairman under Delaware law.  Similarly, allegations
    that Boskin, Chizen, Berg, and Parrett, as members of the Finance & Audit Committee, breached

27  their fiduciary duties by continuing to use Ernst & Young ("E&Y") as Oracle's auditors do not
    implicate bad faith as Plaintiffs do not allege that E&Y—an accounting firm retained to audit

28  *financial* statements (Compl. ¶¶ 174-75)—was even charged with auditing Oracle's compliance
    with anti-discrimination and diversity laws or policies.

2015).  This claim fails because, as discussed above, Plaintiffs cannot establish a predicate breach of fiduciary duty claim.  Further, far from pleading "knowing participation" by any Director Defendant, *see Malpiede v. Townson*, 780 A.2d 1075, 1096-97 (Del. 2001), Plaintiffs disclaim "knowing or reckless conduct" regarding the alleged Proxy misstatements.  (Compl. ¶ 318.)

### 2.      The Complaint Fails to Plead a Claim for Abuse of Control.

Plaintiffs assert an abuse of control claim against Defendants Ellison and Catz.  (Compl. ¶¶ 309-12.)  But Delaware law recognizes no independent tort of "abuse of control."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*, No. C 11-2369-SI, 2012 WL 424557, at *8 (N.D. Cal. Feb. 9, 2012).

### 3.      The Complaint Fails to Plead a Claim for Unjust Enrichment.

To "state a claim for unjust enrichment, Plaintiffs must allege (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law."  *In re Accuray, Inc. S'holder Litig.*, 757 F. Supp. 2d 919, 935 (N.D. Cal. 2010).  Plaintiffs make no effort to show any element of this claim.  Plaintiffs plead no facts showing that any of the Director Defendants' shareholder-approved compensation related to any unlawful conduct, and, as a result, Plaintiffs "fail to allege how each Defendant was unjustly enriched at the expense of [the Company]."  *Id*. at 935-36.

### III.      ORACLE'S BYLAWS REQUIRE THAT PLAINTIFFS' CLAIMS BE BROUGHT IN THE DELAWARE COURT OF CHANCERY.

As shown above, the Court should dismiss the Complaint in its entirety under Rules 23.1 and 12(b)(6).  In fact, if the Court finds that Plaintiffs have not shown demand futility with respect to the Section 14(a) and breach of fiduciary duty claims, then the entire Complaint should be dismissed.  But if the Court chooses not to do so, it should dismiss the Section 14(a) claim (the only federal claim), and then dismiss the balance of the Complaint for *forum non conveniens*. Oracle has a forum-selection provision in its bylaws requiring that derivative actions be adjudicated in Delaware.  (Hill Decl., Ex. D, at § 9.07.)  The bylaw provides that the Delaware Court of Chancery shall be "[t]he sole and exclusive forum for any actual or purported derivative action brought on behalf of the Corporation."  *Id*.  Forum-selection bylaws, such as this one, are

1   valid under Delaware law, *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934

2   (Del. Ch. 2013); 8 Del. C. § 115, and are routinely enforced by federal courts.  *E.g.*, *In re: CytRx*

3   *Corp. S'holder Deriv. Litig.*, No. CV146414GHKPJWX, 2015 WL 9871275, at *1 (C.D. Cal.

4   Oct. 30, 2015); *North v. McNamara*, 47 F. Supp. 3d 635, 639 (S.D. Ohio 2014); *Billard v.*

5   *Angrick*, 220 F. Supp. 3d 132, 139 (D.D.C. 2016).  District courts, however, have split on whether

6   forum-selection bylaws apply to both federal and state claims or only to the latter.  *Compare, e.g.*,

7   *In re Facebook, Inc. S'holder Deriv. Privacy Litig.*, 367 F. Supp. 3d 1108, 1122 (N.D. Cal. 2019)

8   (severing federal claim and dismissing state claims without prejudice to reassertion in Delaware

9   Court of Chancery), *with Seafarers Pension Plan on Behalf of Boeing Co. v. Bradway*, No. 19 C

10  8095, 2020 WL 3246326, at *4 (N.D. Ill. June 8, 2020) (dismissing Section 14(a) claim for *forum*

11  *non conveniens* based on corporation's forum selection bylaw.  Even if the Court were to dismiss

12  only the sole federal claim (Section 14(a)) under Rule 23.1 or Rule 12(b)(6), it should

13  nevertheless also dismiss the state law claims on *forum non conveniens* grounds.  *See Atl. Marine*

14  *Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

15                                    **CONCLUSION**

16      For the reasons set forth above, the Complaint should be dismissed with prejudice.

17  Dated:  January 13, 2021                    JORDAN ETH
                                                PHILIP T. BESIROF
18                                              CHRISTIN J. HILL
                                                MORRISON & FOERSTER LLP
19

20
                                                By:      */s/ Jordan Eth*
21                                                       JORDAN ETH

22                                                  *Attorneys for Director Defendants*

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 13, 2021

DORIAN DALEY
DEBORAH MILLER
JAMES C. MAROULIS
ORACLE CORPORATION

KAREN G. JOHNSON-MCKEWAN
WARRINGTON S. PARKER III
KENNETH P. HERZINGER
ALEXANDER K. TALARIDES
ORRICK, HERRINGTON & SUTCLIFFE
LLP


By:   _/s/ Alexander K. Talarides_
          ALEXANDER K. TALARIDES

*Attorneys for Nominal Defendants Oracle
Corporation and Oracle America, Inc.*

1

## ECF ATTESTATION

2        I, Jordan Eth, am the ECF User whose ID and password are being used to file the

3   foregoing document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that concurrence in

4   the filing of the document has been obtained from each of the other Signatories.

5   Dated:  January 13, 2021

6                                                By:    /s/ Jordan Eth
                                                        JORDAN ETH
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28