1  JORDAN ETH (CA 121617)
   JEth@mofo.com
2  PHILIP T. BESIROF (CA 185053)
   PBesirof@mofo.com
3  CHRISTIN J. HILL (CA 247522)
   CHill@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone:  415.268.7000
6  Facsimile:  415.268.7522
   *Attorneys for Defendants Lawrence J.*
7  *Ellison, Safra A. Catz, Jeffrey O. Henley,*
   *Jeffrey S. Berg, Michael J. Boskin, Bruce R.*
8  *Chizen, George H. Conrades, Rona A.*
   *Fairhead, Renée J. James, Charles Moorman*
9  *IV, Leon E. Panetta, William G. Parrett,*
   *Naomi O. Seligman, and Vishal Sikka*
10
   DORIAN DALEY (CA 129049)
11 Dorian.Dailey@oracle.com
   PEGGY E. BRUGGMAN (CA 184176)
12 Peggy.Bruggman@oracle.com
   JAMES C. MAROULIS (CA 208316)
13 Jim.Maroulis@oracle.com
   ORACLE CORPORATION
14 2300 Oracle Way
   Austin, Texas 78741
15 Telephone:  737.867.1000
   *Attorneys for Nominal Defendants Oracle*
16 *Corporation and Oracle America, Inc.*

   KAREN G. JOHNSON-MCKEWAN (CA 121570)
   KJohnson-mckewan@orrick.com
   KENNETH P. HERZINGER (CA 209866)
   KHerzinger@orrick.com
   ALEXANDER K. TALARIDES (CA 268068)
   ATalarides@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
   San Francisco, California  94105
   Telephone:   415.773.5700
   Facsimile: 415.773.5759
   *Attorneys for Nominal Defendants Oracle*
   *Corporation and Oracle America, Inc.*

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20  KLEIN, et al., derivatively on behalf of         Lead Case No. 3:20-cv-04439-JSC
    ORACLE CORPORATION and ORACLE
21  AMERICA, INC.,
                                                     REPLY IN SUPPORT OF DEFENDANTS'
22                  Plaintiffs,                       MOTION TO DISMISS PLAINTIFFS'
                                                     VERIFIED AMENDED CONSOLIDATED
23         v.                                        SHAREHOLDER DERIVATIVE
                                                     COMPLAINT
24  LAWRENCE J. ELLISON, et al.,
                                                     Date:    April 8, 2021
25                  Defendants.                       Time:    9:00 a.m.
                                                     Judge:   Hon. Jacqueline Scott Corley
26

27

28

1

## TABLE OF CONTENTS

2

Page

3  TABLE OF AUTHORITIES ...................................................................................................... ii

4  INTRODUCTION ................................................................................................................... 1

I.   PLAINTIFFS FAIL TO ALLEGE THAT DEMAND IS EXCUSED. ............................... 2

5

A.   Plaintiffs Get the Law Wrong:  Unless Plaintiffs Show That a Director Is
"Interested," They Cannot Establish Demand Futility............................................ 2

6

B.   No Director Is "Interested" in This Litigation. ...................................................... 3

7

1.   No Director Faces a Substantial Likelihood of Liability for Breach
of Fiduciary Duty or for Violation of Section 14(a). ............................... 3

8

a.   Nothing in the Complaint Contradicts Oracle's Stated
"Commit[ment] to Actively Seeking Women and Minority
Candidates" for the Board. ........................................................ 4

9

10

(i)   Five Fatal Deficiencies Require Dismissal. ..................... 4

11

(ii)   The Complaint Also Fails to Allege Falsity...................... 5

b.   Plaintiffs Have Not Alleged the Falsity of the Directors'
Opinion Statements About Stockholder Proposals. ...................... 7

12

13

c.   Plaintiffs Have Not Alleged the Falsity of Statements About
Oracle's Internal Controls. ........................................................ 10

14

d.   Plaintiffs Ignore Additional Reasons Why the Complaint
Fails to Allege Any Director Is Interested in the Section
14(a) and Breach of Fiduciary Duty Claims. .............................. 10

15

16

2.   Ellison Is Not "Interested" Merely Because He Receives Dividends
as an Oracle Stockholder............................................................... 13

17

C.   Plaintiffs Fail to Allege That a Majority of the Board Lacks Independence
from Ellison.................................................................................................. 15

18

II.   PLAINTIFFS' CLAIMS ALSO FAIL UNDER RULE 12(b)(6). .................................. 17

19

A.   Plaintiffs Have Not Stated a Section 14(a) or Breach of Fiduciary Duty
Claim Based on the Director Defendants' Dissemination of Allegedly False
Proxy Statements........................................................................................... 17

20

21

B.   The Complaint Fails to State a *Caremark* Claim. ................................................ 17

22

1.   The Complaint Fails to Plead Harm to Oracle. ........................................ 18

2.   The Complaint Fails to Plead That Defendants Consciously
Disregarded "Red Flags."........................................................... 18

23

C.   The Remaining State Law Claims Should Be Dismissed. .................................... 19

24

III.   PLAINTIFFS WERE REQUIRED TO BRING THEIR CLAIMS IN THE
DELAWARE COURT OF CHANCERY.................................................................... 20

25

CONCLUSION ..................................................................................................................... 20

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Labs. Deriv. S'holders Litig.*,
325 F.3d 795 (7th Cir. 2003) ................................................................................................ 19

*In re Accuray, Inc. S'holder Deriv. Litig.*,
No. 09-05580 CW, 2010 U.S. Dist. LEXIS 90068 (N.D. Cal. Aug. 31, 2010) ........................ 20

*In re Am. Apparel, Inc. 2014 Deriv. S'holder Litig.*,
No. CV1405230MWFJEMX, 2015 WL 12724070 (C.D. Cal. Apr. 28, 2015) .................. 12, 13

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) .................................................................................................... 17

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
845 A.2d 1040 (Del. 2004) .................................................................................................. 16

*Belova v. Sharp*,
No. CV 07-299-MO, 2008 WL 700961 (D. Or. Mar. 13, 2008) ............................................. 20

*In re Caremark Int'l Deriv. Litig.*,
698 A.2d 959 (Del. Ch. 1996) ........................................................................................ 17, 18

*In re Citigroup S'holder Deriv. Litig.*,
964 A.2d 106 (Del. Ch. 2009) ............................................................................................... 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................................. 7, 8

*Constr. Laborers Pension Tr. v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020) ................................................................................... 5

*In re Countrywide Fin. Corp. Deriv. Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ............................................................................... 13

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
934 F. Supp. 2d 1219 (C.D. Cal. 2013) ........................................................................... 6, 12

*In re Cray Inc.*,
431 F. Supp. 2d 1114 (W.D. Wash. 2006) ........................................................................... 11

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007) ....................................................................................... 10, 11

*Ferris v. Wynn Resorts Ltd.*,
462 F. Supp. 3d 1101 (D. Nev. 2020) .................................................................................... 5

*In re Galena Biopharma, Inc. Deriv. Litig.*,
    83 F. Supp. 3d 1047 (D. Or. 2015) ...................................................................20

*Gulbrandsen ex rel. Wells Fargo & Co. v. Stumpf*,
    No. C-12-05968 JSC, 2013 WL 1942158 (N.D. Cal. May 9, 2013) .......................13

*Hastey on behalf of YRC Worldwide, Inc. v. Welch*,
    449 F. Supp. 3d 1053 (D. Kan. 2020) ..............................................................10

*Highland Legacy Ltd. v. Singer*,
    No. Civ. A 1566-N, 2006 Del. Ch. LEXIS 55 (Del. Ch. Mar. 17, 2006) ...............20

*In re INFOUSA, Inc. S'holders Litig.*,
    953 A.2d 963 (Del. Ch. 2007).............................................................................7

*In re Intel Corp. Deriv. Litig.*,
    621 F. Supp. 2d 165 (D. Del. 2009) ..................................................................19

*In re Johnson & Johnson Deriv. Litig.*,
    865 F. Supp. 2d 545 (D.N.J. 2011) ...................................................................19

*In re Lyft Inc. Sec. Litig.*,
    484 F. Supp. 3d 758 (N.D. Cal. 2020) ................................................................5

*Marvin H. Maurras Revocable Tr. v. Bronfman*,
    No. 12 C 3395, 2013 WL 5348357 (N.D. Ill. Sept. 24, 2013)..........................18, 19

*McElrath v. Kalanick*,
    224 A.3d 982 (Del. 2020) ..........................................................................1, 3, 15

*MCG Capital Corp. v. Maginn*,
    No. 4521-CC, 2010 WL 1782271 (Del. Ch. May 5, 2010)..........................12, 13, 15

*Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*,
    No. 10872-VCMR, 2016 WL 4076369 (Del. Ch. Aug. 1, 2016) ...........................19

*Ocegueda v. Zuckerberg*,
    2021 U.S. Dist. LEXIS 52465 (N.D. Cal. Mar. 19, 2021)............................... *passim*

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014)............................................................................4, 5

*Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)........................................................................................7, 8

*In re Oracle Corp. Deriv. Litig.*,
    No. C 10-3392 RS, 2011 WL 5444262 (N.D. Cal. Nov. 9, 2011)............................3

*In re Oracle Corp. Derivative Litig.*,
    No. CV 2017-0337-SG, 2018 WL 1381331 (Del. Ch. Mar. 19, 2018) ...................15

*In re Pfizer Inc. S'holder Deriv. Litig.,*
   722 F. Supp. 2d 453 (S.D.N.Y. 2010) ...................................................................................19

*Rales v. Blasband,*
   634 A.2d 927 (Del. 1993) ` .......................................................................................................3

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.,*
   845 F.3d 1268 (9th Cir. 2017)...............................................................................................4, 5

*Rosenbloom v. Pyott,*
   765 F.3d 1137 (9th Cir. 2014).............................................................................................7, 19

*Sandys v. Pincus,*
   152 A.3d 124 (Del. 2016) ........................................................................................................16

*Schaffer v. Horizon Pharma PLC,*
   No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018)......................................6

*Shaev v. Baker,*
   No. 16-CV-05541-JST, 2017 WL 1735573 (N.D. Cal. May 4, 2017)...............................10, 12

*In re Signet Jewelers Ltd. Sec. Litig.,*
   No. 16 Civ. 6728 (CM), 2018 U.S. Dist. LEXIS 199809 (S.D.N.Y. Nov. 26, 2018) ...........................................................................................................................................5

*Stone ex rel. AmSouth Bancorporation v. Ritter,*
   911 A.2d 362 (Del. 2006) .................................................................................................17, 18

*Towers v. Iger,*
   912 F.3d 523 (9th Cir. 2018)....................................................................................................7

*Unión de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Servs. Inc.,*
   704 F.3d 155 (1st Cir. 2013) ..................................................................................................13

*United Food & Com. Workers Union v. Zuckerberg,*
   C.A. No. 2018-0671-JTL, 2020 WL 6266162 (Del. Ch. Oct. 26, 2020) ......................3, 14, 16

*Velie v. Hill,*
   736 F. App'x 165 (9th Cir. 2018) ...........................................................................................20

*In re Wells Fargo & Co. S'holder Deriv. Litig.,*
   282 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................................7

*Yu Liang v. Berger,*
   No. 13-CV-12816-IT, 2015 WL 1014525 (D. Mass. Mar. 9, 2015).......................................10

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) ..............................................................................12

**Statute**

8 Del. C. § 102 ..............................................................................................................................12

1

**INTRODUCTION**

2       The central premise of Plaintiffs' Opposition is that the allegedly "racist" Director

3   Defendants must have *lied* about Oracle's commitment to diversity because the Board does not

4   currently have a Black director.  Under Plaintiffs' reading, when the Board said that it is

5   "committed to actively seeking women and minority [director] candidates," it actually meant "we

6   ensure that we will have at least one Black director at all times."  Oracle's proxy statements never

7   said that.  And the absurdity of Plaintiffs' offensive labelling of Defendants as "racist" is borne

8   out by the rich diversity of Oracle's current and past directors—including Black, Latino, Asian

9   American, and female members.  Simply put, Plaintiffs' premise is logically and factually wrong.

10      Plaintiffs also misstate the law.  They say that they may show demand futility by alleging

11  that a majority of directors is "*either* interested *and/or* lack independence."  But as the Supreme

12  Court of Delaware recently confirmed, independence comes into play only to determine whether

13  a director is "subject to *the interested party's* dominion or beholden to that *interested party*."

14  *McElrath v. Kalanick*, 224 A.3d 982, 991 (Del. 2020) (emphasis added).  In other words, the

15  independence analysis is irrelevant unless Plaintiffs plead particularized facts showing that a

16  director is "interested" in the litigation.  Plaintiffs have not done so here.

17      The Opposition claims that Ellison is "interested" because the alleged discrimination

18  somehow led to increased profits and higher dividends, and therefore, a "personal benefit" for

19  Ellison.  Putting aside that Plaintiffs nowhere support their claim of discrimination—let alone

20  their assertion that discrimination increases profits and dividends—Ellison's receipt of dividends

21  does not meet the test for "personal benefit."  "Personal benefit" requires receipt of a benefit not

22  equally shared with other stockholders.  Here, Ellison receives dividends exactly the same way

23  other stockholders do:  pro rata based on his holdings.

24      Plaintiffs also fail to plead particularized facts showing that Ellison or any other Director

25  Defendant is interested in the Section 14(a) and breach of fiduciary duty claims.  Nothing in the

26  Complaint shows that Oracle or its Board engaged in any discrimination, much less that Oracle's

27  2018 and 2019 Proxy Statements ("Proxies") were false.  The Opposition relies on the same trio

28  of allegations that the Motion showed were inadequate and irrelevant.  Oracle *won* the 2017

1   Department of Labor action, and contests the pending *Jewett* class action, and neither of those

2   actions alleges anything about *Board*-level discrimination anyway.  As for the two letters from

3   some members of Congress, they discuss "optics," and make no allegations of violations of law.

4   Because no Director Defendant is "interested," the Court should dismiss the Complaint without

5   reaching the issue of whether any Director Defendant lacks independence from Ellison.

6           The Opposition also ignores numerous other fatal deficiencies.  To name a few:  The

7   Complaint fails "to plead facts specific to each director," in violation of Rule 23.1's prohibition

8   on group pleading.  That is fatal, and the Opposition ignores it.  The Complaint fails to allege that

9   the Director Defendants acted with negligence (a necessary element of a Section 14(a) claim),

10  much less bad faith (as required to allege a non-exculpated breach of fiduciary duty claim).

11  Plaintiffs ignore that as well.  The Opposition also fails to meaningfully respond to the Motion's

12  showing that the Director Defendants are not "interested" in the Section 14(a) claim, because the

13  Complaint does not seek monetary relief for that claim.  That, too, is fatal.  And Plaintiffs

14  continue to cite the 2011 HP litigation without disputing that the statute of limitations has run.

15          Even if Plaintiffs had adequately alleged Ellison was "interested" (they have not),

16  Plaintiffs have also failed to allege that a majority of directors lack independence from Ellison.

17  Plaintiffs concede the independence of four directors (Fairhead, Moorman, Parrett, and Sikka).

18  For four others (Chizen, Boskin, Panetta, and Berg), Plaintiffs ignore the Motion's showing that

19  director compensation, decades-old one-off business relationships with Ellison's adult children,

20  and ties to Stanford University do not overcome the presumption of independence afforded to

21  outside directors.  Those eight directors are independent and constitute a majority of the Board.

22          Finally, for many of the same reasons that demand is not excused, dismissal is appropriate

23  under Rule 12(b)(6) because Plaintiffs fail to state any claim upon which relief may be granted.

24  **I.      PLAINTIFFS FAIL TO ALLEGE THAT DEMAND IS EXCUSED.**

25          **A.      Plaintiffs Get the Law Wrong:  Unless Plaintiffs Show That a Director
                 Is "Interested," They Cannot Establish Demand Futility.**

26

27          Plaintiffs' Opposition begins by muddying the legal standard.  The Opposition asserts that

28  demand is excused if "there is a majority of directors that are *either* interested *and/or* lack

1   independence." (Opp. at 10.)  That is not the law.

2        Rule 23.1 requires Plaintiffs to plead particularized facts creating a reasonable doubt that a

3   majority of the Board would be (a) disinterested·or (b) independent *from an interested director*.

4   (Mot. at 10 (collecting cases)); *McElrath*, 224 A.3d at 991; *In re Oracle Corp. Deriv. Litig.*,

5   No. C 10-3392 RS, 2011 WL 5444262, at *6 (N.D. Cal. Nov. 9, 2011).  This legal framework is

6   not up for debate.  *United Food & Com. Workers Union v. Zuckerberg*, which Plaintiffs

7   repeatedly cite, directly contradicts Plaintiffs' statement of the law and confirms that to show

8   "interestedness," Plaintiffs must plead particularized facts showing that the director "received a

9   personal benefit from the [alleged] *wrongdoing* that was *not equally shared* [with] the

10  stockholders" or "face[s] a substantial likelihood of liability on any of the *claims that are the*

11  *subject of the litigation demand*."  C.A. No. 2018-0671-JTL, 2020 WL 6266162, at *16, *19

12  (Del. Ch. Oct. 26, 2020) (emphasis added) ("*UFCW*").  And the independence prong examines

13  whether a director is "subject to *the interested party's* dominion or beholden to that *interested*

14  *party*."  *McElrath*, 224 A.3d at 991 (emphasis added).  The cases Plaintiffs cite agree.[1]

15  Accordingly, the analysis starts—and often ends—with whether any director is interested.

16  *See id.*; *Oracle*, 2011 WL 5444262, at *6 (If "one or more board members is [not] disqualified as

17  interested, there is no reason to evaluate" independence.).

18        In addition, Plaintiffs do not dispute that Delaware law affords directors a "*presumption*

19  *that they were faithful to their fiduciary duties, and the burden is on the plaintiff in a derivative action*

20  *to overcome that presumption*."  *See Ocegueda v. Zuckerberg*, 2021 U.S. Dist. LEXIS 52465, at

21  *13 (N.D. Cal. Mar. 19, 2021) ("*Zuckerberg*") (collecting cases).

## B.   No Director Is "Interested" in This Litigation.

### 1.   No Director Faces a Substantial Likelihood of Liability for Breach of Fiduciary Duty or for Violation of Section 14(a).

25  Plaintiffs assert that all of the directors (except Sikka) face a substantial likelihood of

---

[1] *See UFCW*, 2020 WL 6266162, at *16 (Plaintiffs must show "another person was interested in the alleged wrongdoing, and the director lacks independence from that person"); *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) (same).

1  liability for breach of fiduciary duty and for violation of Section 14(a) for allegedly disseminating

2  misleading statements in the 2018 and 2019 Proxies.[2]  (Opp. at 21-25.)  Nothing in the

3  Complaint, however, contradicts any statement in the Proxies.  In addition to failing to allege

4  falsity, numerous fatal deficiencies plague the Complaint.

5  **a.  Nothing in the Complaint Contradicts Oracle's Stated "Commit[ment] to Actively Seeking Women and Minority Candidates" for the Board.**

6

7  **(i)  Five Fatal Deficiencies Require Dismissal.**

8  The Motion provided five independent reasons why the Complaint fails to adequately

9  allege Oracle made false statements about its "commit[ment] to actively seeking women and

10  minority candidates" for the Board:  (1) the Complaint includes no allegations about Oracle's

11  pool of director candidates or the nomination and search process; (2) the challenged statements

12  covered both racial and gender diversity; (3) the 2017 DOL and *Jewett* actions say nothing about

13  Oracle's director nomination and search process; (4) the 2017 actions were public knowledge, so

14  investors were aware of the allegations, and Oracle was not required to self-flagellate by

15  endorsing those contested allegations; and (5) statements of corporate commitments are not

16  actionable under *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard*

17  *Co.*, 845 F.3d 1268 (9th Cir. 2017).  (Mot. at 13-17.)

18  Plaintiffs ignore the first four points, each of which independently shows that Oracle did

19  not mislead about its commitment to seeking diverse director candidates.  That is fatal.

20  As to the last, Plaintiffs argue only that *Retail Wholesale* "emphasized that the challenged

21  statements were made in the company's ethics code" and that *Retail Wholesale* "distinguished the

22  Sixth Circuit's decision in [*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014)], which

23  involved false and misleading statements in SEC filings."  (Opp. at 26-27 (emphasis omitted).)

24  Not so.  *Retail Wholesale* distinguished *Omnicare* because *Omnicare* involved statements of fact,

25  not non-actionable statements of commitment.  Omnicare's SEC filing stated that "it was in

26  _____

27  [2] Indeed, even that argument misrepresents the Complaint, which only alleges "Demand is Futile Against the *Officer Directors*" because they "made or disseminated materially false and misleading statements[.]"  (Compl. ¶¶ 238-40 (emphasis added)).  For that reason alone, the Court

28  should conclude that the Outside Directors are not interested.

1  material compliance with state and federal law" despite defendants' prior internal audits

2  "reveal[ing] pervasive Medicare fraud" and "conduct leading to a $98 million settlement with the

3  government." *Retail Wholesale*, 845 F.3d at 1276.[3]

4        Further, nothing in *Retail Wholesale* suggests commitments made in SEC filings are

5  excluded from its holding.  And courts routinely apply *Retail Wholesale* in that context.[4]  In fact,

6  just last week, a court in this district applied *Retail Wholesale* to dismiss a strikingly similar

7  complaint that challenged statements in Facebook's proxy expressing the corporation's

8  commitment to diversity.  *See Zuckerberg*, 2021 U.S. Dist. LEXIS 52465, at *24-25; *see also*

9  *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1121 (D. Nev. 2020) (SEC filing's reference

10 to statements about honesty, using good judgment, etc. were non-actionable); *In re Lyft Inc. Sec.*

11 *Litig.*, 484 F. Supp. 3d 758, 770 (N.D. Cal. 2020) (similar).  This Court should follow suit.

12       The Opposition's only remaining argument is that the Proxies were misleading because

13 "the Board and the Governance Committee have never in good faith actively sought minority

14 candidates."  (Opp. at 6, 22.)  As the Motion showed, the Complaint contains no particularized

15 allegations at all about the process by which Oracle's Board evaluates and selects new Board

16 members.  Further, the Board's historical and present composition puts the lie to Plaintiffs' bald

17 assertion that the Director Defendants seek to exclude minority candidates.[5]  (Mot. at 14, 17.)  As

18 in *Zuckerberg*, Plaintiffs' conclusory allegations fail.  2021 U.S. Dist. LEXIS 52465, at *5-6, *17.

19                    **(ii)      The Complaint Also Fails to Allege Falsity.**

20       Along with the above fatal deficiencies, the Complaint does not adequately allege any

21

22       [3] The other two cases Plaintiffs cite are not Rule 23.1 cases and share no similarity with
   the facts alleged here.  *Constr. Laborers Pension Tr. v. CBS Corp.*, 433 F. Supp. 3d 515, 539
23 (S.D.N.Y. 2020) (finding falsity where statement about commitment to harassment-free
   workplace was contradicted by CEO's concealing long history of sexual harassment and board's
24 knowledge of related criminal complaint and internal investigation); *In re Signet Jewelers Ltd.*
   *Sec. Litig.*, No. 16 Civ. 6728 (CM), 2018 U.S. Dist. LEXIS 199809, at *17-18 (S.D.N.Y. Nov. 26,
25 2018) (statement describing confidential class action arbitration as limited to 15 employees and as
   alleging discriminatory practices at the "store-level" adequately alleged to be false because
   arbitration involved 200 employees and allegations of discrimination "at all levels").

26       [4] In *Retail Wholesale*, the defendant published the challenged code of ethics "on the
   investor-relations portion of [its] website."  845 F.3d at 1273.
27
   [5] Paragraph 159 also provides no support because it only makes conclusory allegations
28 about three of the directors (Panetta, Chizen, and Berg), not the Board as a whole.

1    wrongdoing by the Company, much less wrongdoing caused by or known to the Director

2    Defendants that *contradicted any statement* in Oracle's 2018 and 2019 Proxies.  (Mot. at 13.)

3    The Opposition responds by reciting the same trio of inadequate allegations—the DOL suit, the

4    *Jewett* action, and the congressional letters—because there is nothing more that Plaintiffs can say.

5         Plaintiffs continue to rely on the two irrelevant 2017 lawsuits.  Despite conceding that

6    Oracle *won* the DOL action because the DOL failed to prove any theory of discrimination, the

7    Opposition nevertheless cites that suit over a dozen times.  (Opp. at 4-5, 7, 22-24, 26, 32-33.)  But

8    a failed lawsuit cannot form the basis of a stockholder derivative action.  As for the pending 2017

9    *Jewett* action, there has been no finding of discrimination at any level within Oracle, so that case

10   also cannot support falsity.  *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F.

11   Supp. 2d 1219, 1226 (C.D. Cal. 2013); *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763

12   (JMF), 2018 WL 481883, at *5 (S.D.N.Y. Jan. 18, 2018).  In addition, as shown in the Motion

13   (but ignored by Plaintiffs), neither *Jewett* nor the DOL action makes any allegations at all about

14   *Board*-level discrimination.  Nor can either support a finding of falsity, because Oracle was not

15   required to endorse those contested and publicly available allegations.  (*See* Mot. at 29, 32.)

16        Plaintiffs also say that Oracle has been the subject of "two Congressional inquiries."

17   (Opp. at 1, 7, 22-24, 26, 32.)  But those "inquiries" are actually just two letters sent by certain

18   members of Congress discussing "optics," not alleging wrongdoing or violations of law.  (Compl.

19   ¶¶ 9, 77.)  At most, the letters "express[ ] dismay about allegations of pay discrimination"

20   (Compl. ¶ 9 (January 2019)) and concern that Oracle's Board did not, in November 2019, have a

21   Black or Asian American director (Compl. ¶ 77 (November 2019)).[6]  That does not support an

22   inference of wrongdoing at all.  For the same reason, the letters do not constitute particularized

23   allegations of wrongdoing caused by or known to the Director Defendants.

24        In short, the 2017 actions and the congressional letters are inadequate to show any

25

26   _____

27        [6] Plaintiffs ignore that one month after the November 2019 letter, Oracle appointed Vishal
     Sikka, an Asian American, to the Board.  Press Release, *Oracle Names Vishal Sikka to the Board
     of Directors,* Oracle (Dec. 9, 2019), https://www.oracle.com/corporate/pressrelease/vishal-sikka-
28   named-to-board-of-directors-120919.html.

1    wrongdoing at all.  And they do not show the falsity of any statement in the Proxies.[7]

2         The cases Plaintiffs cite show what particularized factual allegations look like.  In

3    *Rosenbloom v. Pyott*, 765 F.3d 1137, 1150 (9th Cir. 2014), "the plaintiffs 'offer[ed] a battery of

4    particularized factual allegations that strongly support[ed] an inference . . . that the Board knew of

5    and did nothing about illegal activity.'  Such allegations included that the board 'closely and

6    regularly monitored' potentially illicit activities; 'received data' that 'qualifie[d] as a "red flag" of

7    illegality; and 'received repeated FDA warnings about illegal' activities."  *Towers v. Iger*,

8    912 F.3d 523, 532 (9th Cir. 2018) (quoting *Rosenbloom*, 765 F.3d at 1152-54) (internal citations

9    omitted).  The same goes for the other cases Plaintiffs cite.  *See In re Wells Fargo & Co. S'holder*

10   *Deriv. Litig.*, 282 F. Supp. 3d 1074, 1082, 1096 (N.D. Cal. 2017) (company attributed growth to

11   cross-selling rather than fraudulent account creation, when board knew of, amongst other things,

12   whistleblower lawsuit and investigations by the Office of the Comptroller of the Currency and the

13   Consumer Financial Protection Bureau, showing over two million unauthorized accounts); *In re*

14   *INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 982, 991 (Del. Ch. 2007) (detailing years of self-

15   dealing between director-affiliated companies, and finding company falsely stated it paid director

16   $1.5 million for lease of aircraft, yet $600,000 of that amount was for use of personal residences).

17   Those cases are nothing like Plaintiffs' unsupported conspiracy theory that the Director

18   Defendants must be "racist" because the Board does not at presently include a Black director.

19           **b.        Plaintiffs Have Not Alleged the Falsity of the Directors'**
                        **Opinion Statements About Stockholder Proposals.**
20

21        Plaintiffs also do not substantively respond to the Motion's showing that the Director

22   Defendants did not make subjectively or objectively false opinion statements recommending that

23   stockholders reject proposals to (a) prepare a pay equity report; (b) implement director term

24   limits; and (c) require an independent Board chair.  (Mot. 17-20 (citing *Omnicare Inc. v. Laborers*

25   *Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)); *City of Dearborn Heights*

26   _____

27        [7] Plaintiffs' contention in a footnote that "information regarding diversity is required to be
     disclosed by Item 407 of SEC Regulation S-K," is a red herring.  (Opp. at 27, n.9.)  As shown in
     the Motion, Oracle complied with Item 407.  (Mot. at 17, n.13.)
28

1    *Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017)).)[8]

2        **Pay Equity Report.**  The Opposition says that the Board lied when it recommended that

3    stockholders vote against the pay equity report proposal.  Plaintiffs argue that Oracle was not

4    "committed to ensuring that [it] does not discriminate on the basis of gender" because the Board

5    was aware of the 2017 DOL action, the *Jewett* class action, and the two letters from some

6    members of Congress.  (Opp. at 7 (citing Compl. ¶¶ 54, 76-88, 96, 125-26, 130).)  That fails for

7    all the reasons previously explained.  Moreover, as the Motion showed, the Board recommended

8    against the pay equity report proposal because its preparation "would be costly and time-

9    consuming and [because it] . . . would not lead to meaningful gains" in pay equity.  (Mot. at 19

10   (quoting Compl. ¶¶ 55, 126).)  Plaintiffs say nothing about why that statement was false.  Lastly,

11   Plaintiffs repeat their assertion that the 2017 and 2018 Board minutes show "the Board and its

12   committees barely discussed and reviewed any documents before signing off on the pre-drafted

13   opposition statements to stockholder proposals for a pay equity report."  (Opp. at 7, 27.)  Relying

14   on the *actual* Board minutes, as opposed to Plaintiffs' made-up characterization, the Motion

15   showed that "Board members asked questions and discussed" the stockholder proposal.  (Mot. at

16   18-19 (quoting Hill Decl., Ex. A).)  Moreover, "'directors of Delaware corporations are fully

17   protected in relying in good faith on the reports of officers and experts.'"  (*Id.* (quoting *In re*

18   *Citigroup S'holder Deriv. Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009))).  The Opposition ignores

19   both the judicially-noticeable facts and the law.

20       **Director Term Limits.**  Here, the Opposition ignores that its "leading academics" are

21   really a generic survey of investors and that, in either case, the Complaint alleges no facts

22   suggesting that the Director Defendants did not actually believe that "imposing limits on director

23   tenure would arbitrarily deprive [the Board] of the valuable contributions of its most experienced

24   members."  (Mot. at 18 (discussing Compl. ¶¶ 122, 152).)  Without any factual allegations,

25   Plaintiffs argue that the Board's reliance on director experience concealed that the Board's refusal

26

27       [8] Plaintiffs do not mention *Align*.  As for *Omnicare*, Plaintiffs block-quote it and assert
     that the opinion statements are actionable because the Director Defendants allegedly performed
     no investigation before recommending that stockholders vote against the proposals.  (Opp. at 27.)

28   But Plaintiffs cite no factual allegation to support that assertion.  (*Id.*)

1   to "adopt director term limits and to appoint new African-American members to the Board" was

2   the result of "explicit or implicit racism" and a scheme to get themselves reelected.  (Opp. at 7,

3   26.)  Conclusory assertions of racism are not enough to survive a Rule 23.1 motion to dismiss.

4         **Independent Chairperson.**  Plaintiffs say that the Director Defendants "did not

5   genuinely believe" that "an independent chair [was not] necessary to ensure that the Board

6   provides independent and effective oversight."  (Opp. at 7-8.)  In support, Plaintiffs claim that

7   Ellison "caus[ed] the Company to engage in discriminatory hiring [and] pay practices" and that

8   the 2011 HP litigation was the result of Ellison's "personal vendetta."  (*Id.* (citing Compl. ¶ 140).)

9   But Plaintiffs provide no factual allegations supporting their assertion that anyone engaged in

10   discrimination, let alone that Ellison "caused" any discrimination.  Rejecting very similar

11   conclusory allegations, one recent decision put it concisely, "These are not facts: these are

12   conclusions."  *Zuckerberg*, 2021 U.S. Dist. LEXIS 52465, at *17 (rejecting allegation that "lack

13   of an independent chair resulted in great harm to Facebook because the Chair, as Facebook's

14   CEO, engaged in" allegedly discriminatory conduct).  As for Ellison's claimed "personal

15   vendetta," the Complaint admits that Ellison was *not* the Chair of the Board when the HP dispute

16   began, so that dispute cannot support the importance of an independent chair, much less the

17   Board's true beliefs about the need for an independent chair.[9]  (Compl. ¶¶ 31, 33.)

18         **Say on Pay.**  Lastly, Plaintiffs assert that the "2019 and 2020 Proxies" misled

19   stockholders by asking them to vote in favor of "say on pay" proposals, "but failed to disclose

20   that the executives' achievement of performance goals was based in part on unlawful

21   discriminatory hiring and pay practices."  (Opp. at 8, 23 (citing Compl. ¶¶ 136-37, 147).)  The

22   Complaint does not support that theory.  Paragraphs 137 and 147 just restate the same conclusory

23   assertion.  And Paragraph 136 just quotes the compensation proposal.  Otherwise, Plaintiffs rely

24   only on the same trio of allegations—the failed DOL lawsuit, the congressional letters, and the

25   pending *Jewett* action—that are inadequate to show any wrongdoing and irrelevant to whether the

26   Director Defendants genuinely believed stockholders should vote for the compensation plan.

27

28        [9] Nothing in the Complaint suggests that Henley, who was Chair of the Board from 2004 to 2014, caused the HP/Oracle dispute.  (Compl. ¶ 33.)

(Mot. at 32 (collecting cases).)  Similarly, those allegations cannot show the objective falsity of the Board's recommendation in favor of the executive compensation proposal.[10]

### c.    Plaintiffs Have Not Alleged the Falsity of Statements About Oracle's Internal Controls.

Plaintiffs argue that the 2019 Proxy falsely stated that Oracle's "Corporate governance structure was 'effective' and provided 'oversight of management and Board accountability.'" (Compl. ¶ 145; *see also* Opp. at 5, 23-24.)  That is a nonstarter because neither the 2019 nor the 2018 Proxy contains that broad-brush statement.  (Hill Decl., Exs. E-F.)  In any event, as with the other allegedly false statements, Plaintiffs do not attempt to explain how the 2017 actions or the congressional letters show the Company lacked effective internal controls.  The other paragraphs Plaintiffs cite are filled with conclusory assertions, not particularized factual allegations.[11]  (*See, e.g.*, Compl. ¶ 65 ("The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct[.]").)

### d.    Plaintiffs Ignore Additional Reasons Why the Complaint Fails to Allege Any Director Is Interested in the Section 14(a) and Breach of Fiduciary Duty Claims.

The Motion also pointed to multiple other reasons why Plaintiffs fail to show that any Director Defendant is interested.  Each of those reasons independently supports dismissing the Complaint under Rule 23.1.  Yet Plaintiffs ignore them.

The Motion showed that controlling law prohibits group pleading and requires derivative plaintiffs to "plead facts *specific to each director*."  *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (emphasis in original); (*see* Mot. at 14, 19, 33 n.29).  The Opposition's failure to

---

[10] In addition, as the stockholder compensation vote was "not binding on Oracle, the Board or the Compensation Committee" (Compl. ¶ 136), Plaintiffs cannot show that they were harmed by that alleged misstatement.  *See Hastey on behalf of YRC Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1067 (D. Kan. 2020) (advisory vote on executive compensation could not satisfy essential link requirement); *Yu Liang v. Berger*, No. 13-CV-12816-IT, 2015 WL 1014525, at *10 (D. Mass. Mar. 9, 2015) (same).

[11] The facts alleged here are nothing like those alleged in *Shaev v. Baker*, No. 16-CV-05541-JST, 2017 WL 1735573, at *4, *15 (N.D. Cal. May 4, 2017) (company failed to disclose "seriously deficient internal and disclosure controls" despite board knowing of Office of the Comptroller of the Currency determination that the company "lack[ed] an appropriate control or oversight structure" and of multiple federal and state investigations).

1   respond to that argument at all, much less with any contrary law or any director-specific

2   allegations (because neither exists), is an independent basis for dismissal under Rule 23.1.

3        The Court should also dismiss both the Section 14(a) and the breach of fiduciary duty

4   claims because Plaintiffs fail to allege negligence for the Section 14(a) claim, much less gross

5   negligence or bad faith, as required for breach of fiduciary duty.  (Mot. at 20, 22 n.15, 29-33.)

6   Plaintiffs ignore that argument, which independently supports dismissal under Rule 23.1.

7        Similarly, the Motion demonstrated that the Complaint fails to adequately allege loss

8   causation or a cognizable harm, as required by Section 14(a).  (Mot. at 21.)  Plaintiffs ignore

9   those arguments, too.  At most, Plaintiffs assert that the Company was harmed by receiving

10  congressional letters and by defending against the dismissed DOL suit and the *Jewett* action.

11  (Opp. at 8, 24.)  But Plaintiffs cite no authority for the novel proposition that a company can be

12  held liable for *successfully* defending itself against a lawsuit or for continuing to defend itself

13  against disputed allegations.  *See In re Cray Inc.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006)

14  ("[D]erivative claims are foreclosed when they merely allege damages based on the potential

15  costs of investigating, defending, or satisfying a judgment or settlement for what might be

16  unlawful conduct.").  Plaintiffs also do not explain how receiving the congressional letters

17  harmed Oracle.  Plaintiffs again point to unspecified "settlements" (Opp. at 8) that the Complaint

18  alleges nothing about (*see* Mot. at 21), and to the HP litigation, which Plaintiffs concede is time-

19  barred and unrelated to their assertions about discrimination.  And, without supporting authority,

20  Plaintiffs continue to rely on alleged harm to Oracle's reputation and goodwill, which the Motion

21  showed were speculative and insufficient to establish loss causation.  (Mot. at 21.)

22       Relatedly, the Motion showed that the Complaint fails to allege that the purported

23  misstatements were an "essential link" to any of those alleged (non-existent) harms because the

24  alleged misstatements did not "directly authorize[ ] the loss-generating corporate action."  (Mot.

25  at 20-21 (collecting cases).)  Plaintiffs' response to that argument misses the mark.  Plaintiffs

26  argue that the alleged "material omissions" were the "essential link" to the stockholders'

27  reelection of the directors and the executive compensation approval.  (Opp. at 24.)  But the

28  Motion showed that courts routinely reject those exact types of allegations as insufficient to

establish Section 14(a)'s essential link requirement.  (Mot. at 21 (collecting cases)); *Zuckerberg*, 2021 U.S. Dist. LEXIS 52465, at *25-26.  Rather than discussing the authority cited in the Motion, Plaintiffs cite to *Shaev* and *In re Countrywide*, which do not share any similarities to this action.  *See supra* n.11 & *infra* n.15.[12]  More fundamentally, Plaintiffs fail to allege or explain how the alleged misstatements in the Proxies were an essential link to the Company incurring costs related to the Director Defendants' compensation (Opp. at 7-9)—the say-on-pay proposal was *advisory*, and the Complaint alleges no connection between the Outside Directors' compensation and the alleged misstatements.  *See supra* n.10.

Lastly, Plaintiffs offer only a misguided response to the Motion's showing that the Director Defendants are not "interested" in the Section 14(a) cause of action because Plaintiffs do not seek any monetary damages for that claim—a fact that Plaintiffs do not deny (Opp. at 25).  (Mot. at 12-13 (citing Compl. ¶ 323; *MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271, at *21 (Del. Ch. May 5, 2010); *In re Am. Apparel, Inc. 2014 Deriv. S'holder Litig.*, No. CV1405230MWFJEMX, 2015 WL 12724070, at *15 (C.D. Cal. Apr. 28, 2015)).)  Plaintiffs say that the cited cases are "inapposite [ ] because they dealt with lack of damages as a result of exculpatory provisions adopted under 8 Del. Code § 102."  (Opp. at 25 (emphasis omitted).)  According to Plaintiffs, that does not apply here because Plaintiffs allege "that Defendants have breached their duties of loyalty and good faith," which may not be exculpated under § 102(b)(7).[13]  (Opp. at 25-26.)

That argument misses the mark.  As the Motion discussed, Plaintiffs must plead a breach of the duty of loyalty or good faith, *because* Oracle's Articles of Incorporation *has* exculpated its directors from liability for any lesser breach.  (Mot. at 29.)  More to the point, § 102(b)(7) and the directors' fiduciary duties are irrelevant to this issue because Plaintiffs have disclaimed monetary

---

[12] The inadequate allegations in this case stand in contrast to the other case Plaintiffs cite. *See In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1016 (N.D. Cal. 2007) (essential link shown where misleading proxies authorized back-dated stock options for directors).

[13] The Opposition also says that the Section 14(a) claim seeks "injunctive relief," which might result in the Director Defendants losing compensation.  (Opp. at 25.)  But as explained, interestedness requires that the director face a substantial likelihood of liability, not possible decreased compensation.  Plaintiffs point to no case suggesting otherwise.

relief for the *Section 14(a) claim*.  (Mot. at 12-13.)  So, the Director Defendants do not have "a disabling 'interest' in" *that claim* because non-monetary "equitable relief" that requires the corporation to implement changes "does not subject [director] defendants to the type of personal liability necessary to excuse demand."  *MCG Capital*, 2010 WL 1782271, at *21; *In re Am. Apparel*, 2015 WL 12724070, at *15.  Plaintiffs have no response to that dispositive argument.[14]

## 2.   Ellison Is Not "Interested" Merely Because He Receives Dividends as an Oracle Stockholder.

Plaintiffs' new theory is that Ellison is interested because, by allegedly "concealing and perpetuating the alleged wrongdoing," he received "dividends" "not shared by shareholders as a whole, given that no other shareholder holds such a large block of Oracle stock."[15]  (Opp. at 10-11.)  Neither the Complaint's allegations nor the law supports Plaintiffs' novel theory.

Factually, the Opposition cites nothing to support its assertion that Ellison "conceal[ed] and perpetuat[ed]" or "allow[ed]" the alleged "unlawful business practices, including discriminatory hiring and compensation practices."  (Opp. at 11.)  That is because, as shown, Plaintiffs have not adequately alleged any wrongdoing by Oracle, Ellison, or any other Director Defendant.  More to the point, the Complaint contains no allegations suggesting Ellison himself was responsible for the alleged discrimination in the dismissed DOL action or the contested

---

[14] Plaintiffs also have no response to Defendants' showing that Plaintiffs' Section 14(a) claim based on the 2018 Proxy is time barred.  (Mot. at 28 n.26.)

[15] The Opposition also argues that the asserted "discriminatory hiring and payment practices at Oracle" "could not have happened without Ellison's knowledge" because he is (allegedly) "involved in all aspects of the Company's management."  (Opp. at 11.)  But the cited paragraphs discuss only outside director independence, and say nothing about Ellison's management responsibilities, much less why those responsibilities show that Ellison knew of any (non-existent) discriminatory practices.  (*See* Compl. ¶¶ 241-256); *see Gulbrandsen ex rel. Wells Fargo & Co. v. Stumpf*, No. C-12-05968 JSC, 2013 WL 1942158, at *5 (N.D. Cal. May 9, 2013) (rejecting threadbare assertions that directors should have known about alleged wrongdoing).  That lack of factual allegations contrasts with the cases Plaintiffs cite.  *See Unión de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Servs. Inc.*, 704 F.3d 155, 161, 165-66 (1st Cir. 2013) (excusing demand where director had "high level" involvement in "scheme of manipulative trading . . . to manufacture the appearance of market interest"); *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1075-77, 1080-81 & n.40 (C.D. Cal. 2008) ("inside directors" had "significant management responsibilities," and "fundamental changes to the Company's business model" were used to "achieve the performance measures that were the benchmarks [for] compensation plans").

1   *Jewett* action.  The same is true for the congressional letters.  In addition, the Complaint says

2   nothing about Ellison's responsibility for or involvement in the Board's director nomination

3   process.  In fact, the Complaint concedes that Ellison was *not* on Oracle's Nomination and

4   Governance Committee, which is responsible for searching for and nominating directors.

5   (Compl. ¶¶ 118, 120, 133.)

6          Moreover, the law precludes Plaintiffs' wrongheaded claim that receipt of pro rata

7   dividends means that a director is "interested."  For that argument, Plaintiffs rely on *UFCW*,

8   where the Court of Chancery found that Mark Zuckerberg was interested because he received a

9   benefit that no other stockholder would receive.  2020 WL 6266162, at \*2.  Specifically,

10  Zuckerberg proposed, and the board subsequently approved, a stock reclassification that would

11  have allowed Zuckerberg to satisfy his "Giving Pledge"—a pledge to donate a majority of his

12  wealth during his lifetime, which was mostly tied up in Facebook stock—without losing control

13  of Facebook.  *Id.* at \*2.

14         Thus, contrary to Plaintiffs' position, directors are not "interested" merely because they

15  are controlling stockholders[16] or own a substantial amount of the company's shares.  *Id.* at \*21;

16  (Opp. at 11-12, 12 n.2).  Rather, in *UFCW*, Zuckerberg was "interested" because the

17  reclassification proposal allowed him to sell his economic interest in Facebook while retaining

18  control of the company—a benefit not shared by any other stockholder.  Here, Ellison's receipt of

19  dividends is the opposite—every stockholder receives dividends at precisely the same rate.[17]

20                                  \*       \*       \*

21         To plead demand futility, Plaintiffs must allege particularized facts showing that at least

22  one director has a disabling "interest" in the litigation.  Plaintiffs have not done so here, so the

23  Complaint should be dismissed under Rule 23.1.

24  _____

25         [16] In addition, the Complaint rebuts Plaintiffs' claim that Ellison is a controlling stockholder.  (Compl. ¶ 210 (alleging Ellison owns 35.4% of Oracle).)

26         [17] For all the reasons discussed, the law also does not support Plaintiffs' new, unalleged theory that Catz and Henley are interested because deciding to sue Oracle "would jeopardize their

27  positions at Oracle and their lavish compensation."  (Opp. at 11-12.)  As shown, Plaintiffs have not adequately alleged any wrongdoing by anyone, much less Catz and Henley, and the mere

28  receipt of compensation is not enough to show interestedness.

1

2

**C.    Plaintiffs Fail to Allege That a Majority of the Board Lacks Independence from Ellison.**

3    Because Plaintiffs have not shown that any Director Defendant is interested, the Court

4    should dismiss the Complaint without reaching the independence prong of the demand futility

5    analysis. *McElrath*, 224 A.3d at 991.  In any event, Plaintiffs' independence arguments, which

6    turn entirely on showing Ellison is interested, also fail.

7    To begin, Plaintiffs concede that Fairhead, Moorman, Parrett, and Sikka are independent.

8    The Opposition ignores Defendants' arguments and authorities and fails to rebut the Motion's

9    showing that Panetta, Berg, Boskin, and Chizen are also independent.

10    **Panetta.**  The Motion showed that the Complaint's two factual allegations about Panetta

11    do not show that he lacks independence from Ellison.  First, the Complaint fails to allege that

12    Panetta's director compensation is material to him or that Ellison can unilaterally affect it.  (Mot.

13    at 27 (citing *MCG Capital*, 2010 WL 1782271, at *20).)  Second, Panetta's one-off involvement

14    with Ellison's daughter's production company for the film *Zero Dark Thirty* falls far short of

15    showing Panetta lacks independence from Ellison.  (*Id*.)  In fact, the Complaint alleges no

16    interaction at all between Panetta and Ellison's daughter.  Rather, it alleges only that years before

17    he joined the Board, Panetta cooperated with the producer and screenplay writer, Mark Boal.

18    (Compl. ¶¶ 296-97.)  And lastly, nothing can be inferred from the fact that Panetta, the then-CIA

19    director, cooperated with the development of a film about the hunt for Osama Bin Laden.

20    Pointing to *In re Oracle Corp. Derivative Litig.*, No. CV 2017-0337-SG, 2018 WL

21    1381331, at *17 (Del. Ch. Mar. 19, 2018), Plaintiffs only add that without Ellison's support,

22    Panetta would not have been reelected in 2018, so he must lack independence from Ellison.

23    (Opp. at 18.)  But *Oracle* does not say that every Oracle director lacks independence from Ellison

24    merely because Ellison might withhold his support.  *In re Oracle* found that the threat of losing a

25    directorship *combined* with "multiple layers of [outside] business connections" with the Company

26    may create a reasonable inference that the director could not impartially consider whether to sue

27    Ellison. *Id.* (discussing, among other things, director's affiliation with venture capital firms that

28    "operate in areas dominated by" Oracle and "high-level positions at another company that does

1    substantial business" with the Company).  That does not apply to Panetta because Plaintiffs have

2    not alleged that Panetta has *any* outside business connections with Oracle or with Ellison.

3         **Berg.**  Plaintiffs also fail to show that Berg lacks independence.  The Opposition just

4    repeats that Berg receives compensation for being an Oracle director and that 15 years ago, Berg

5    acted as a talent agent for Ellison's son for the movie *Flyboys*.  (Opp. at 19-20.)  As the Motion

6    showed, unreliable allegations about Berg's wealth and a relationship with Ellison's son 15 years

7    ago do not show a lack of independence.  (Mot. at 27-28.)

8         **Boskin and Chizen.**  Plaintiffs offer more of the same with respect to Boskin and Chizen.

9    As discussed, allegations about director compensation are not enough without factual allegations

10   showing that Ellison could unilaterally affect it and that the compensation was material.  (Mot. at

11   26.)  In addition, *UFCW* shows that Oracle's and Ellison's alleged Stanford connections are not

12   enough to infer that Boskin cannot independently evaluate matters concerning Ellison for fear of

13   jeopardizing his employment at Stanford, where he has been a faculty member for *50 years*.

14   (Compl. ¶ 282); *UFCW*, 2020 WL 6266162, at *22 (explaining that institution affiliation requires

15   "specific allegations that would support a reason to doubt that the director could exercise

16   independent judgment on the issue presented").  All the more so for Chizen, who the Complaint

17   alleges was once a speaker in a Stanford course on cloud computing—*i.e.*, Chizen faces no threat

18   of losing that former position.  (Compl. ¶¶ 287-89.)

19        And Plaintiffs have no response to the Supreme Court of Delaware's decision in *Beam ex*

20   *rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, which explains that "a characterization"

21   of "close friends[hip]"—like the Complaint's allegation that Boskin and Ellison are "personal

22   friend[s]" (*see, e.g.,* Compl. ¶ 286)—"is not enough to negate independence for demand excusal

23   purposes."[18]  845 A.2d 1040, 1051-52 (Del. 2004).  Plaintiffs' allegations about Boskin are also

24   insufficient in combination:  "[F]or presuit demand purposes, friendship must be accompanied by

25   *substantially more in the nature of serious allegations* that would lead to a reasonable doubt as to

26

27        [18] Ellison delivering sushi to Boskin in 1999 (Compl. ¶ 286) is nothing like *Sandys v.*
     *Pincus*, 152 A.3d 124, 130 (Del. 2016) (joint ownership of private plane is a "partnership in a
     personal asset" that requires "close cooperation" and suggests a "very close personal relationship

28   [ ] like family ties").

a director's independence." *Id.* (emphasis added).  Nothing Plaintiffs allege comes close to "serious allegations" creating a "reasonable doubt as to" Boskin's independence.

No Director Defendant is interested in this litigation.  That independently supports dismissal under Rule 23.1.  In addition, a majority of the Board (Fairhead, Moorman, Parrett, Sikka, Panetta, Chizen, Berg, and Boskin) is independent.  That, too, supports dismissal.

## II.   PLAINTIFFS' CLAIMS ALSO FAIL UNDER RULE 12(b)(6).

If the Court does not dismiss the Complaint in its entirety under Rule 23.1, it should do so under Rule 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted.

### A.   Plaintiffs Have Not Stated a Section 14(a) or Breach of Fiduciary Duty Claim Based on the Director Defendants' Dissemination of Allegedly False Proxy Statements.

Plaintiffs concede that the Rule 23.1 legal analysis applies equally to whether Plaintiffs have adequately pled a Section 14(a) claim under Rule 12(b)(6).  (Opp. at 34-35.)  As shown, Plaintiffs' Section 14(a) claim fails for a host of reasons, so it also fails under Rule 12(b)(6).  *See also Zuckerberg*, 2021 U.S. Dist. LEXIS 52465, at *23-26 (dismissing Section 14(a) claim based on substantially similar proxy statements).

Similarly, Plaintiffs agree that their breach of fiduciary duty claim based on alleged false statements in the Proxies rises—and in this case falls—with the Rule 23.1 analysis.  So for the reasons discussed, the Court should dismiss that claim under Rule 12(b)(6), too.

### B.   The Complaint Fails to State a *Caremark* Claim.

Plaintiffs concede that they must plead that the Director Defendants breached their duty of loyalty or acted in bad faith.  (Opp. at 25, 30.)  Plaintiffs say that the Complaint meets that burden because the directors "ignored unlawful and discriminatory practices."  (Opp. at 30.)  This is a classic *Caremark* claim—"possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."[19]  *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (citation omitted); *In re Caremark Int'l Deriv. Litig.*, 698 A.2d

---

[19] Plaintiffs attempt to muddle the *Caremark* standard by referencing the "*Aronson* test." (Opp. at 30-31.)  *Aronson* has no bearing on the Rule 12(b)(6) analysis because *Aronson* is about assessing demand futility.  *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).

959, 967 (Del. Ch. 1996).  Plaintiffs concede that to state a non-exculpated claim under this theory, the Complaint must plead facts showing that the Director Defendants "had actual or constructive knowledge of" the alleged unlawful and discriminatory practices and consciously disregarded their duty to address that alleged misconduct.  (Opp. at 30-31.)  Further, the Complaint fails to allege a "corporate trauma" proximately caused by the Board's alleged "bad faith."  (Mot. at 30.)  Nothing in the Opposition rehabilitates the Complaint's deficiencies.

### 1. The Complaint Fails to Plead Harm to Oracle.

Plaintiffs fail to plead any cognizable harm to Oracle.  *Supra* at 11; (Mot. at 21, 32 n.28).  To recap:  alleged harms to Oracle's goodwill and reputation are too speculative to be actionable; Plaintiffs concede that the claims based on the HP litigation are time barred; Oracle *won* the DOL action; and the disputed *Jewett* action is pending, so it cannot serve as a basis for loss.  (Mot. at 21, 31-32, 32 n.28); *supra* at 11.  Plaintiffs respond with repetition, rather than refutation.

### 2. The Complaint Fails to Plead That Defendants Consciously Disregarded "Red Flags."

The Opposition contends that the DOL lawsuit, the *Jewett* action, and the congressional letters were "red flags" that the Director Defendants consciously disregarded.  (Opp. at 31.)  That argument fails.  None of those allegations constitutes a red flag, and in any event, Oracle's Board did not *ignore* them.  Oracle *won* the DOL lawsuit, is contesting the *Jewett* action, and appointed a diverse Board member just one month after receiving the November 2019 congressional letter.  *See Zuckerberg*, 2021 U.S. Dist. LEXIS 52465, at *16 ("The timeline of the" red flags "resulted in Facebook[] resolving the challenges . . . (and not ignoring them).").

In addition, the Motion showed, and the Opposition ignores, that courts routinely hold that such lawsuits and inquiries are not "red flags."  (Mot. at 32 (collecting cases).)  Plaintiffs are wrong that the cited cases turned on whether the purported red flags "made their way to the board."  (Opp. at 32.)  To the contrary, those courts held that the lawsuits and inquiries were not red flags even if the directors' knowledge of them was assumed.  *See Marvin H. Maurras Revocable Tr. v. Bronfman*, No. 12 C 3395, 2013 WL 5348357, at *6 (N.D. Ill. Sept. 24, 2013) (assuming "Defendants knew Accretive was being sued for FDCPA violations . . . that does not

1    make it reasonable to infer that Defendants had actual knowledge of ongoing violations, much

2    less that they encouraged or condoned such violations"); *In re Johnson & Johnson Deriv. Litig.*,

3    865 F. Supp. 2d 545, 566 (D.N.J. 2011) ("the pertinent question is not whether the Board knew

4    about the subpoena but whether the subpoena is a determination of wrongdoing").[20]

5         Further, Plaintiffs concede that neither the DOL lawsuit nor the *Jewett* action contains

6    allegations about any discriminatory practices *by the Board*. (*See* Opp. at 32.) Despite Plaintiffs'

7    contrary characterization, the Complaint does not allege that the congressional letters contain any

8    allegations of wrongdoing or violations of law, at the Board level or any other level. (Compl. ¶¶

9    9, 77.) So, those are not red flags. Plus, Plaintiffs' claim that the "Defendants[ ] fail[ed] to

10   ensure Board diversity" (Opp. at 32) ignores that more than one-third of Oracle's Board is either

11   female or a member of a community of color (Mot. at 3-4; Compl. ¶ 1). Plaintiffs' contention

12   really amounts to a claim that Oracle's Board fails Plaintiffs' made-up definition of diversity.

13   That is not enough under Rule 12(b)(6).[21]

14       **C.**    **The Remaining State Law Claims Should Be Dismissed.**

15       **Aiding and Abetting.** Plaintiffs' aiding and abetting claim fails because Plaintiffs have

16   not pled a predicate violation. (Mot. at 33-34.) It also fails because Plaintiffs concede that the

17   Complaint disclaims any "knowing or reckless conduct." (Compl. ¶ 318; *see* Mot. at 34.)

18       **Abuse of Control.** The Motion showed that Delaware does not recognize an independent

19

20       [20] Plaintiffs do not even attempt to distinguish *In re Intel Corp. Deriv. Litig.*, 621 F. Supp.
2d 165, 175 (D. Del. 2009), which supports the same point. And Plaintiffs fail to meaningfully

21   distinguish *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, No. 10872-VCMR, 2016
WL 4076369, at *8 (Del. Ch. Aug. 1, 2016). (Opp. at 32.) In *Melbourne*, the board

22   "continuously monitored" the lawsuits and "consistently expressed . . . its view that its business
practices were not violative of" any laws. 2016 WL 4076369, at *12. If anything, Oracle's

23   Board is on stronger footing than the board in *Melbourne*. Whereas the defendants in *Melbourne*
addressed the alleged red flags with public relations and lobbying, *id.* at *10, Oracle addressed

24   the alleged red flags—the DOL action and the pending *Jewett* action—by winning the former and
contesting the latter.

25       [21] Plaintiffs' cited cases illustrate what is missing here. *In re Pfizer Inc. S'holder Deriv.
Litig.*, 722 F. Supp. 2d 453, 460 (S.D.N.Y. 2010) ("red flags" included "reports to the board of

26   [two] settlements, a large number of FDA violation notices and warning letters, [and] several
reports to Pfizer's compliance personnel and senior executives of continuing kickbacks and off-

27   label marketing"); *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 809 (7th Cir. 2003)
("extensive paper trail" supported claim); *see supra* at 7 (discussing *Rosenbloom*).

28

tort of "abuse of control."  (Mot. at 34.)  The Opposition cites a lone decision in response.  (Opp. at 34 (citing *Belova v. Sharp*, No. CV 07-299-MO, 2008 WL 700961, at *9 (D. Or. Mar. 13, 2008)).)  But the defendants in *Belova* "did not move to dismiss those claims on the grounds that they were not separate torts from breach of fiduciary duty and, thus, the court did not address the specific question that is before this Court."  *In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F. Supp. 3d 1047, 1072 (D. Or. 2015) (dismissing claims).

**Unjust Enrichment.**  The Complaint fails to adequately allege any element of Plaintiffs' unjust enrichment claim.  There is no underlying wrongdoing.  And there is no unjust payment or any impoverishment to the Company, much less any relation between those and the alleged discriminatory conduct.  (Mot. at 34.)  Plaintiffs' singular reliance on director compensation (Opp. at 34) is also insufficient to plead unjust enrichment.  *See In re Accuray, Inc. S'holder Deriv. Litig.*, No. 09-05580 CW, 2010 U.S. Dist. LEXIS 90068, at *40 (N.D. Cal. Aug. 31, 2010) (rejecting claims that defendants "were unjustly enriched as a result of" compensation received "while breaching fiduciary duties owed to Accuray"); *Highland Legacy Ltd. v. Singer*, No. Civ. A 1566-N, 2006 Del. Ch. LEXIS 55, at *31 n.73 (Del. Ch. Mar. 17, 2006) (same).

### III.   PLAINTIFFS WERE REQUIRED TO BRING THEIR CLAIMS IN THE DELAWARE COURT OF CHANCERY.

The Court should dismiss the Complaint in its entirety under Rules 23.1 and 12(b)(6).  If, however, the Court declines to dismiss any portion of Plaintiffs' claims, Oracle's forum-selection bylaws provide an independent basis for dismissal.  (Mot. at 34.)  Contrary to the Opposition, Defendants do not concede that the forum-selection clause cannot be applied to Plaintiffs' Section 14(a) claim.  (*See* Mot. at 35; Opp. at 35.)  In addition, Plaintiffs concede that if the Court dismisses the Section 14(a) claim but no other claim, the Court should dismiss the balance of the Complaint for *forum non conveniens*.  (*See* Opp. at 35:19-24); *Zuckerberg*, 2021 U.S. Dist. LEXIS 52465, at *18-19 (dismissing non-Section 14(a) claims for *forum non conveniens*).

### CONCLUSION

The Complaint should be dismissed with prejudice as Plaintiffs have not identified any new allegations supporting amendment.  *Velie v. Hill*, 736 F. App'x 165, 166–67 (9th Cir. 2018).

Dated:  March 22, 2021

JORDAN ETH
PHILIP T. BESIROF
CHRISTIN J. HILL
MORRISON & FOERSTER LLP


By:   _/s/ Jordan Eth_
            JORDAN ETH

*Attorneys for Director Defendants*

Dated:  March 22, 2021

DORIAN DALEY
PEGGY E. BRUGGMAN
JAMES C. MAROULIS
ORACLE CORPORATION

KAREN G. JOHNSON-MCKEWAN
KENNETH P. HERZINGER
ALEXANDER K. TALARIDES
ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   _/s/ Alexander K. Talarides_
            ALEXANDER K. TALARIDES

*Attorneys for Nominal Defendants Oracle Corporation and Oracle America, Inc.*

1

## **ECF ATTESTATION**

2          I, Jordan Eth, am the ECF User whose ID and password are being used to file the

3     foregoing document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that concurrence in

4     the filing of the document has been obtained from each of the other Signatories.

5

6     Dated:  March 22, 2021

7                                                                    */s/ Jordan Eth*
                                                               JORDAN ETH

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28