UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. ANDRE KLEIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>LAWRENCE J. ELLISON, et al.,<br><br>    Defendants. | Case No. 20-cv-04439-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 60 |

Plaintiffs bring this shareholder derivative action against certain directors and officers of nominal defendants Oracle Corporation and Oracle America, Inc. (collectively "Oracle"). They allege that because Oracle has failed to meaningfully diversify its Board of Directors, and has discriminatory hiring and promotional practices, representations Defendants made in Proxy Statements breached Defendants' fiduciary duties and violated § 14(a) of the Securities Exchange Act. Before the Court is Defendants' motion to dismiss.[1] (Dkt. No. 60.)[2] After carefully considering the parties' briefing, and having had the benefit of oral argument on April 8, 2021, the Court GRANTS Defendants' motion. Plaintiffs have not sufficiently pleaded demand futility and, in light of Oracle's by-laws, the state law claims must be asserted in the Delaware Court of Chancery.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. 636(c). (Dkt. Nos. 10, 12, 19.) Plaintiff Sherman filed her consent to magistrate judge jurisdiction in *Sherman v. Ellison et al.*, Case. No. 3:20-cv-05225-JSC (Dkt. No. 7.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# BACKGROUND

**I.   Complaint Allegations**

Oracle provides computer infrastructure products and solutions. Lawrence J. Ellison is Oracle Corporation's Chairman, Chief Technology Officer, and controlling shareholder; Safra A. Catz is Oracle Corporation's Chief Executive Officer, and Jeffrey O. Henley serves as Oracle Corporation's Vice Chairman (collectively the "Officer Defendants"). At all relevant times, the following individuals formed Oracle's Board of Directors (the "Board"): Jeffrey S. Berg, Michael J. Boskin, Bruce R. Chizen, George H. Conrades, Rona A. Fairhead, Renée J. James, Charles Moorman IV, Leon E. Panetta, William G. Parnett, Naomi O. Seligman, and Vishal Sikka (collectively the "Director Defendants"). The Board is responsible for Oracle's internal controls regarding diversity, anti-discrimination, pay equity, hiring, and promotion.

According to Plaintiffs, Oracle "has consistently refused to appoint Black individuals and minorities to its Board and to management positions within the company." (Dkt. No. 55 at 32 ¶ 75.) On November 22, 2019, over 30 members of Congress sent Mr. Ellison a letter regarding the Board's lack of diversity. On January 19, 2017, the Department of Labor sued Oracle for alleged pay discrimination against its minority employees. Current and former Oracle female employees initiated a class action lawsuit against Oracle on June 16, 2017 in the Superior Court of Orange County, alleging gender-based pay discrimination. The Department of Labor filed an amended complaint against Oracle on January 22, 2019, alleging that the company owed women and other minority employees over $400,000,000 in lost wages as a result of the company's compensation discrimination, and that the company discriminated against African American college graduates in its hiring processes. On September 22, 2019, an administrative law judge recommended dismissal of the Department of Labor's complaint against Oracle.

Plaintiffs allege that notwithstanding Defendants' knowledge of these allegations regarding Oracle's discriminatory employment practices, Defendants represented in the company's 2019 Proxy Statement that Oracle was "actively seek[ing] women and minority candidates from the pool from which director candidates are chosen[.]" (Dkt. No. 55 at 48 ¶ 118.) The 2019 Proxy also stated that the Board "believe[d] that imposing limits on director tenure would arbitrarily

2

1  deprive it of the valuable contributions of its most experienced members." (*Id.* at 49 ¶ 121.)  In
2  the 2019 Proxy, the Board rejected a stockholder proposal to prepare a pay equity report by April
3  2020.  According to Plaintiffs, the Board rejected similar proposals for a pay equity report in 2017
4  and 2018.

5      Plaintiffs similarly allege that the 2019 Proxy's proposal to approve Oracle's executive
6  officers' compensation failed to disclose that the achievement of the officers' performance goals
7  "was based in part on unlawful discriminatory hiring and pay practices." (*Id.* at 56 ¶ 137.)  The
8  2019 Proxy also opposed a proposal calling for an independent board chairman.  At bottom,
9  Plaintiffs allege that the 2019 Proxy was materially misleading because Oracle had no interest in
10 addressing its lack of diversity and discriminatory practices regarding the hiring and promotion of
11 minority employees and minority Board candidates.  (*See id.* at 60-62 ¶¶ 143.)  The 2019 Proxy's
12 representations regarding diversity, anti-discrimination, and the promotion of minority candidates
13 to Oracle's Board were "substantially identical" to those made in the company's 2018 Proxy
14 Statement.[3]  Had shareholders known of the company's underlying misconduct, Plaintiffs allege,
15 shareholders "would not have voted to keep the same Directors who were allowing the illegal
16 practices to continue." (*Id.* at 63 ¶ 147.)

17     Plaintiffs did not make a demand on the Board to institute this action.  They bring claims
18 for breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, abuse of control,
19 unjust enrichment, and violations of § 14(a) of the Securities Exchange Act.

20 **II.   Procedural History**

21     R. Andre Klein filed this derivative action against Defendants on July 2, 2020.  (Dkt. No.
22 1.)  Kathleen Dinsmore filed a substantially similar derivative action in this District on July 10,
23 2020, and the Court granted the parties' stipulation to consolidate the actions on July 22, 2020.
24 (Dkt. No. 8.)  On July 30, 2020, Alison Sherman filed a derivative action in this District, *Sherman*
25 *v. Ellison et al.*, Case. No. 3:20-05225-JSC, concerning the same parties and based on the same
26 factual allegations.  The Court consolidated the *Sherman* action on November 30, 2020, and

---

[3] The Court takes judicial notice of the 2018 and 2019 Proxies.  (Dkt. Nos. 64-2 & 64-3). *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006).

1   Plaintiffs filed an amended consolidated complaint on December 7, 2020 (the "complaint"). (Dkt.
2   Nos. 54 & 55.) Defendants moved to dismiss the complaint on January 13, 2021. (Dkt. No. 60.)
3   The motion is fully briefed, and the Court heard oral argument on April 8, 2021.

**DISCUSSION**

Defendants insist that Plaintiffs have not adequately pleaded demand futility, the complaint fails to state claims upon which relief can be granted, and Oracle's by-laws' forum-selection provision requires that derivative actions be adjudicated in Delaware.

**I.      Demand Futility**

**Legal Requirements**

"Because of the extraordinary nature of a shareholder derivative suit, [Federal Rule of Civil Procedure] 23.1 establishes stringent conditions for bringing such a suit." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (citation omitted). Rule 23.1 requires that a shareholder derivative complaint allege with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . and [] the reasons for not obtaining the action or not making the effort." Fed R. Civ. P. 23.1(b); *see also Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016) ("The 'demand futility rule' is [] reflected in the heightened pleading standard set forth in Rule 23.1 of the Federal Rules of Civil Procedure[.]") (citation omitted).

Because Oracle is incorporated in Delaware, Delaware law governs whether Plaintiffs' failure to make a pre-suit demand is excusable as futile. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991); *see also Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) ("The substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief.") (citation omitted). Where, as here, a derivative suit concerns the violation of its board's oversight or fiduciary duties, *see Guttman v. Huang*, 823 A.2d 492, 499 (Del. Ch. 2003), demand is futile—and therefore excusable—where the complaint "alleges particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993).

To show that a director is "interested" the plaintiff must plead particularized facts showing that the director faces a substantial likelihood of liability on any of the claims that are the subject of the litigation *or* particularized facts showing that the director received a personal benefit from the wrongdoing that was not equally shared with the stockholders. *See United Food and Commercial Workers Union v. Zuckerberg*, 2020 WL 6266162 (D. Del. Oct. 26, 2020) (citing Delaware law); *see also McElrath v. Kalanick,* 224 A.3d 982, 991 (Del. 2020) ("A director is interested if . . . she would face a substantial likelihood of personal liability for the conduct alleged in the complaint"). To show a director's lack of independence, "the complaint of a stockholder-plaintiff must create a reasonable doubt that a director is not so beholden to an interested director . . . that his or her discretion would be sterilized." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (internal quotation marks omitted) (citing *Rales*, 634 A.2d at 936); *see also McElrath*, 224 A.3d at 991 ("Independence turns on whether [a director is] subject to the interested party's dominion or beholden to that interested party.") (internal quotation marks and citations omitted). The derivative complaint plaintiff "must plead facts *specific to each director*, demonstrating that at least half of them" are either interested or not independent. *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (citing *Stewart*, 845 A.2d at 1050-51) (original emphasis).

Analyzing demand futility thus often requires two steps. First, has the plaintiff alleged particularized facts showing that any director is interested? Second, if that showing has been made as to at least one director, has the plaintiff pled particularized facts showing that enough of the remaining directors are so beholden to an interested director that the directors cannot independently act on a shareholder demand. If the plaintiff has not pled particularized facts showing that any director is interested, then demand futility has not been met and the court need not evaluate whether any director is independent of an interested director. *See In re Oracle Corp. Derivative Litig.*, No. C 10-3392 RS, 2011 WL 5444262, at *6 (N.D. Cal. Nov. 9, 2011).

**Analysis**

As the Oracle Board had 14 members at the time the complaint was filed, Plaintiffs must show that at least 7 of the 14 are interested or not independent of an interested director. The

1    Amended Complaint alleges that demand is futile because the Officer Defendants "face a
2    substantial likelihood of liability for violating the federal securities laws and breaching their duty
3    of due care" and are therefore interested. (Dkt. No. 55 at 91 ¶¶ 237-240.) They then maintain that
4    at least 4 of the Director Defendants are not independent of all Officer Defendants (and in
5    particular Ellison) and therefore as at least 7 directors are interested or not independent they have
6    sufficiently alleged demand futility. (*Id.* at ¶ 241.)

### A.  Interested Officer Defendants

Plaintiffs maintain that the Officer Defendants are interested because they face a substantial likelihood of liability for breach of fiduciary duty and violation of § 14(a) because they disseminated various false and misleading statements generally regarding Oracle's diversity, board qualifications, efforts to recruit minorities, pay equity and lack of need for an independent Chairman. In determining whether Plaintiffs have met their burden, they "are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Rosenbloom*, 765 F.3d at 1148 (internal quotation marks and citation omitted).

#### 1.  Substantial Likelihood of Liability

Because, as will be explained below, Plaintiffs' state law claims must be brought in the Delaware Court of Chancery, the Court will here examine whether Plaintiffs have pled particularized facts showing that the Officer Defendants face a substantial likelihood of liability on the § 14(a) claim.

To state a claim under § 14(a) (and Rule 14a-9), a plaintiff must establish that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) ("[Section 14(a)] disallow[s] the solicitation of a proxy by a statement that contains either (1) a false or

6

1  misleading declaration of material fact, or (2) an omission of material fact that makes any portion
2  of the statement misleading.") (citation omitted).

3  Plaintiffs' complaint alleges a litany of allegedly false Proxy Statements; however, their
4  opposition focuses on six categories: (1) statements about Oracle's commitment to diversity on the
5  Board, (2) statements that lengthy tenure by Board directors is in the company's best interest, (3)
6  statements in opposition to a shareholders' proposal to publish an annual pay equity report, (4)
7  statements in opposition to the company having an independent chairperson, (5) statements
8  regarding Oracle's "say on pay" proposals, and (6) statements regarding the company having
9  effective internal controls. (Dkt. No. 63 at 29-30.) The Amended Complaint, however, fails to
10 plead particularized facts supporting an inference that any of the challenged statements were false
11 or misleading and therefore that any defendant faces a substantial likelihood of liability.

### a. The Specific Proxy Statements

#### *Statements Regarding Commitment to Board Diversity*

Plaintiffs have not alleged particularized facts that support an inference that the 2019 Proxy's representation that Oracle "actively seek[s] women and minority candidates from the pool from which director candidates are chosen" was false or misleading. (Dkt. No. 55 at 48-49 ¶¶ 118-119.) First, that "no Black individuals currently serve on the Board" (*id.* at ¶ 120) does not support an inference of the statement's falsity. Second, the complaint's allegation "that the Board has never in good faith actively sought minority candidates" (*id.*) is a conclusion unsupported by particularized facts. "To be actionable under the securities laws, an omission [or misrepresentation] must . . . affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (citation omitted). Plaintiffs fail to plead any facts regarding the "state of affairs" concerning Oracle's efforts to seek and promote minority candidates to its Board that the Proxies materially misrepresent.

#### *Statements Regarding Directors' Tenure*

Plaintiffs have also failed to allege particularized facts that support an inference that the 2019 Proxy's statement that "the Board believes that imposing limits on director tenure would

7

arbitrarily deprive it of the valuable contributions of its most experienced members" was false or misleading. (Dkt. No. 55 at 49 ¶ 121.) Indeed, there are no facts that remotely suggest that the Board did not believe what was stated. Plaintiffs' argument that the Board's opposition to the term limit proposals led to a "very entrenched" Board, allegations concerning the "true facts" of Oracle's "systemic racism" and the Board's pretext for opposing the term limit proposal are "not [particularized] facts: the[y] are conclusions[,]" *Ocegueda on behalf of Facebook v. Zuckerberg*, No. 20-CV-04444-LB, 2021 WL 1056611, at *7 (N.D. Cal. Mar. 19, 2021), and do not plausibly suggest that the Proxies' statements of opposition to director term limits are cognizable misrepresentations under § 14(a).

### ***Statements in Opposition to a Shareholders' Proposal for an Annual Pay Equity Report***

Plaintiffs' challenge to the Proxies' statements regarding the Board's opposition to a shareholder proposal for an annual pay equity report, and, in particular, to the Board's statements regarding its commitment to ensuring the company does not engage in gender discrimination in compensation, that they "believe a diverse workforce enables us to better anticipate and meet our customers' changing needs", that "[d]iversity and inclusion in our workforce starts at the top" and the requested pay equity report would be costly and time-consuming and not lead to meaningful gains fares no better. (*See* Dkt. No. 55 at 51-52 ¶¶ 125-126.) Once again, the complaint is devoid of particular facts that suggest the Board did not believe what it stated.

Plaintiffs' allegations regarding the thoroughness (or lack thereof) of the Board's consideration of the pay equity report request concern how and what sources the Officer Defendants consulted—or failed to consult—before publishing the Proxies' opposition statements; they do not support an inference that the published statements were false. In fact, the Amended Complaint alleges that the Board "discussed and questioned" the pay equity proposal and opposition in an August 1, 2017 meeting. (Dkt. No. 55 at 52 ¶ 128.) The allegation that the statement was pre-drafted does not contribute to the required inference. *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009).

Plaintiffs' reliance on *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188 (2015), is unavailing. The *Omnicare, Inc.* court held that "a sincere

8

statement of pure opinion is not an 'untrue statement of material fact.'" *Id*. at 186. Plaintiffs, however, have not alleged particularized facts that support an inference that the Board's statements of opinion were not genuinely held. And *Omnicare's* discussion of when an opinion in a registration statement, even if genuinely held, can still be actionable under Section 11 is not applicable here.

Plaintiffs' citation to *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 539 (S.D.N.Y. 2020) is instructive. There Leslie Moonves, CBS's former CEO and Board chairman, publicly stated that it is important that a company's culture not allow sexual harassment in the context of the #MeToo movement. The court held that it was "barely plausible that a reasonable investor would construe his statement as implicitly representing that he was just learning of problems with workplace sexual harassment at CBS" when in fact "at that time he was actively seeking to conceal his own past sexual misconduct." *Id.*. In *CBS Corp.* there was no issue of whether there were alleged particularized facts; the *New Yorker* and other news organizations had reported in detail on accusations of sexual misconduct against Mooves and thus, just barely, the plaintiffs had sufficiently alleged that his implicit representation that he had not known of sexual harassment allegations at CBS was false. *Id.* at 526-27. The broad brush allegations here are far from the barely plausible but detailed allegations in *CBC Corp*.

***Statements in Opposition to an Independent Chairman***

No particularized facts are alleged that support an inference that the 2019 Proxy's statements of opposition to an independent chairman were false or misleading. Again, there is nothing alleged that suggests the Officer Defendants did not "genuinely believe" that "it is valuable for Mr. Ellison to serve as Chairman because his familiarity with and knowledge of our technologies and product offerings are unmatched. With over 40 years of experience at Oracle, Mr. Ellison is uniquely positioned to help the Board oversee our company's business and strategic direction." (Dkt. No. 55 at 58 ¶ 139.) The complaint's allegations as to Mr. Ellison's lawsuit against Hewlett-Packard (*id.* at 96-97 ¶¶ 257-258) are of no assistance to Plaintiffs meeting their burden.

9

### *"Say on Pay" Statements*

Plaintiffs' insistence that the 2019 Proxy's "say on pay" statements were false and misleading is, as the other challenges to the Proxies, unsupported by particular allegations that support an inference of falsity.

### ***Statements Regarding Effective Internal Controls***

Finally, Plaintiffs aver that the 2019 Proxy

> conveyed that the Company's corporate governance structure was "effective" and provided "oversight of management and Board accountability." In reality, the Company's corporate governance structure and defective internal controls allowed senior executives and the Board to sidestep real accountability and instead continue perpetuating the discriminatory practices that led to the DOL lawsuit and the Company's discriminatory pay practices, private class action lawsuits filed by female employees, Congressional inquiry into the lack of diversity at Oracle, and other discrimination in hiring practices and lack of diversity on both the Board and management.

(Dkt. No. 55 at 62 ¶ 145.) The DOL lawsuit, unresolved class action lawsuits, and the letter from certain Congress persons do not support an inference that the Proxy's statement of an effective governance standard was false or misleading.

An administrative law judge determined that the Department of Labor "had not proven its case" and that decision became final. (Dkt. No. 55 at 36 ¶ 90 n.15.) Plaintiffs' insistence that the lawsuit's disposition means only that the DOL did not prove its case, while true, does not in any way suggest that the existence of the case itself supports an inference of a lack of effective internal controls. To accept Plaintiffs' argument would mean that no publicly traded company could ever make a statement as to being properly governed so long as it had been sued—even unsuccessfully—by aggrieved employees. Such a result is not the law. *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("[C]ompanies are not required to engage in "self-flagellation" by disclosing unproven allegations") (citations omitted). *See also In re Paypal Holdings, Inc. S'holder Derivative Litig.*, No. 17-CV-00162-RS, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) ("Federal securities laws do not impose upon companies a duty to disclose uncharged, unadjudicated wrongdoing.") (internal quotation marks and citation omitted); *Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir. 1992) (determining that § 14(a) "does not impose a duty to disclose uncharged, unadjudicated

10

wrongdoing or mismanagement"). For the same reason, the granting of class certification in an ongoing pay discrimination lawsuit against Oracle does not support an inference that the Proxy's bland statement of effective controls was false and misleading. Additionally, the "Congressional inquiry" Oracle faced was simply a letter of concern regarding Oracle's lack of diversity sent from certain congressional representatives—not even formal action or litigation activity which, in any event, is not sufficient.[4]

Plaintiffs' citation to *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020) in support of the proposition that they may rely on allegations from unadjudicated lawsuits to plausibly allege the "reality" of Oracle's pay discrimination is unpersuasive. There the Ninth Circuit recited the specific and particular allegations of another complaint to conclude that the plaintiff had plausibly alleged that the defendants had made false statements. *Id.* at 791-92. In particular, the court noted that the plaintiff's "descriptions of wrongdoing are highly detailed and specific, and they are based on firsthand knowledge that he could reasonably be expected to possess by virtue of his position as a mid-level auditor at the company." *Id.* at 792. Nothing close to such specific and highly-detailed allegations are made in the complaint here; instead, Plaintiffs rely on the mere existence of the complaints themselves to satisfy their burden. They do not.

Plaintiffs' reliance on *Shaev v. Baker* is equally unavailing. The *Shaev* court held "the abundance of particularized allegations in the Consolidated Amended Complaint support an inference that a majority of the Director Defendants—and in particular those Director Defendants who were on the risk committee, audit and examination committee, and corporate responsibility committee—*knew about widespread illegal activity* and consciously disregarded their fiduciary duties to oversee and monitor the company." *Shaev v. Baker*, No. 16-CV-05541-JST, 2017 WL 1735573, at *15 (N.D. Cal. May 4, 2017) (emphasis added). Nothing close to that inference is sufficiently alleged here.

### b. Statements of Opinion are not Actionable

One reason Plaintiffs fail to plead particularized facts supporting an inference that the

---

[4] For the same reasons these lawsuits and the congressional letter do not support a substantial likelihood of liability under § 14(a) for any of the other challenged Proxy statements.

11

challenged statements are false or misleading is that to be misleading a statement must be "capable of objective verification." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (internal quotation marks and citation omitted). "Puffing" and "puffery"—statements that "express[] an opinion rather than a knowingly false statement of fact"—are not misleading. *Id.* at 1275-76 (internal quotation marks and citations omitted). "Aspirational" statements that "emphasize a desire to commit to certain 'shared values' . . . and [that] provide a 'vague statement[] of optimism' [are] not capable of objective verification." *Id.* at 1276 (citation omitted). Many of the alleged misrepresentations are precisely the "aspirational statements" that *Retail Wholesale* contemplates.

Plaintiffs urge that *Retail Wholesale* is inapplicable because it concerned statements in a company's ethics code. Not so. Nothing in the opinion limits its application to corporate ethics codes. To the contrary, its reasoning—for example, that statements such as "we make ethical decisions" cannot be evaluated as false or misleading because to hold otherwise "could turn all corporate wrongdoing into securities fraud," *id.* at 1276—applies equally to many of the statements challenged in this lawsuit. *See Ocegueda*, 2021 WL 1056611, at *9.

### 2. Mr. Ellison's Interest as a Controlling Shareholder

Plaintiffs' primary argument in their opposition brief is that Mr. Ellison is an interested director because he received a personal benefit from the wrongdoing that was not equally shared with the stockholders. *See United Food and Commerical Workers Union*, 2020 WL 6266162 at *16. In particular, they insist that Mr. Ellison is an interested director because he "derived [approximately] $1 billion" from Oracle's discriminatory employment practices that "could not have happened without [his] knowledge," and therefore "he stands to lose billions of dollars in dividends were he to authorize a lawsuit against himself or other directors." (Dkt. No. 63 at 18.) This argument, however, skips a step: Plaintiffs must still allege particularized facts that show the wrongdoing in the first instance. As explained above, the complaint concludes that there is wrongdoing—namely, pay discrimination and a lack of commitment to diversity—but does not allege specific facts that plausibly support the conclusory allegations. Without adequate allegations of wrongdoing it does not matter that Mr. Ellison is a controlling shareholder. The

same with the other directors. *See In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1128 (N.D. Cal. 2019) (stating that "[t]he mere fact that Zuckerberg is a controlling shareholder is not enough to establish his lack of independence, because that would eviscerate the disinterested prong of the demand futility test and would find any director involved in the day-to-day running of company to be 'interested' under any set of facts.") (internal quotation marks and citation omitted).

* * *

For the reasons set forth above, Plaintiffs have failed to allege particularized facts sufficient to show that any director defendant is "interested." As a result, Plaintiffs have not sufficiently alleged demand futility as to their § 14(a) claim. *See In re Google, Inc. S'holder Derivative Litig.,* No. C 11-4248 PJH, 2013 WL 5402220, at *4 (N.D. Cal. Sept. 26, 2013) ("[W]here there is no director who is interested in the transaction, there is no need to consider the independence of the remaining directors.") (citing *In re The Dow Chem. Co. Deriv. Litig.,* 2010 WL 66769 at *7 (Del. Ch. 2010)).

## II.   Forum-Selection Clause

Oracle's bylaws contain a forum-selection clause requiring the adjudication of derivative actions in the Delaware Court of Chancery. Under the clause, the Court of Chancery shall be the "sole and exclusive forum for any actual or purported derivative action brought on behalf of [Oracle]."[5] Defendant argues that the clause is enforceable, and that Plaintiffs' claims should be dismissed on *forum non conveniens* grounds. (Dkt. No. 60 at 44.) The Court agrees.

The *forum non conveniens* doctrine provides an "appropriate enforcement mechanism[]" for forum-selection clauses. *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868 (N.D. Cal. 2015) (citations omitted); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 61 (2013). A forum-selection clause "represents the parties' agreement as to the most proper forum," and "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (internal quotation marks

---

[5] The Court takes judicial notice of Oracle's forum-selection clause. (Dkt. No. 60-5 at 19.) *See Dreiling*, 458 F.3d at 946 n.2.

1  and citations omitted) (alterations omitted).  "Courts must enforce a forum-selection clause unless
2  the contractually selected forum affords the plaintiffs no remedies whatsoever[;] [i]t is the
3  *availability* of a remedy that matters, not predictions of the likelihood of a win on the merits."  *Yei*
4  *A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091–92 (9th Cir. 2018) (internal
5  quotations and citations omitted) (original emphasis).  Where a forum-selection clause governs the
6  parties' dispute, a court must deem that the parties' private interests "weigh entirely in favor of the
7  preselected forum[,]" *Atlantic Marine*, 571 U.S. at 64, and consider only various "public-interest
8  considerations," *id.*  These "public-interest factors" include: (1) the local interest in the lawsuit, (2)
9  the court's familiarity with the governing law, (3) the burden on local courts and juries, (4)
10 congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."
11 *Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (internal
12 quotation marks and citations omitted); *see also Ocegueda*, 2021 WL 1056611, at *8.  The party
13 challenging a forum-selection clause "bear[s] the burden of showing that public-interest factors
14 overwhelmingly disfavor a transfer."  *Atlantic Marine*, 571 U.S. at 67.
15     Plaintiffs argue that "if the Court upholds the § 14(a) claim, it should [not] dismiss the
16 other claims" on *forum non conveniens* grounds, and that the alternative—severing the remaining
17 claims from Plaintiffs' § 14(a) claim—would lead to "needless duplication and waste of judicial
18 and parties' resources."  (Dkt. No. 63 at 42.)  This argument is unpersuasive.  Oracle is a Delaware
19 corporation, this is a derivative action, and all of Plaintiffs' claims—excepting the § 14(a) claim—
20 are governed by Delaware law.  As such, this is not the "exceptional" or "unusual case[]" *Atlantic*
21 *Marine* contemplated, and Plaintiffs have not shown that the public-interest factors
22 "overwhelmingly disfavor a transfer[.]" 571 U.S. at 63-64.
23     In fact, the *Ocegueda* court—considering the enforceability of a forum-selection clause in
24 Facebook's Certificate of Incorporation that required the adjudication of derivative actions in the
25 Delaware Court of Chancery—severed its § 14(a) claim from the state law claims, and dismissed
26 the state law claims on *forum non conveniens* grounds "to reassertion of the claims in the
27 Delaware Court of Chancery."  *Ocegueda*, 2021 WL 1056611, at *8-9 ("[T]his court has
28 discretion to sever the federal claim, dismiss it, and dismiss the remaining state claims in favor of

14

the Delaware forum.") (citing *In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d at 1122). The Court finds this reasoning persuasive. Accordingly, the Court severs Plaintiffs' § 14(a) claim from the state law claims. *See In re Facebook*, 367 F. Supp. 3d at 1120 ("[T]he Delaware Court of Chancery does not have jurisdiction to hear Plaintiffs' federal claims, [and] the Court has discretion to sever the federal claims and dismiss the remaining claims to be brought in the prescribed forum.") (citation omitted). Plaintiffs' remaining state law claims are dismissed on *forum non conveniens* grounds to reassertion in the Delaware Court of Chancery. *See Ocegueda*, 2021 WL 1056611, at *9; *In re Facebook*, 367 F. Supp. 3d at 1122.

## CONCLUSION

For the reason set forth above, the Court GRANTS Defendants' motion to dismiss Plaintiffs' § 14(a) claim under Rule 23.1. The Court GRANTS the motion to dismiss all other claims on *forum non conveniens* grounds. The state law claims are dismissed without prejudice to reassertion in the Delaware Court of Chancery. Plaintiffs are granted leave to amend the § 14(a) claim and shall file an amended complaint, if any, within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: May 21, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge